## FIRST TEXAS PRUDENTIAL INS. CO. v. MORELAND.

### No. 2223.

Court of Civil Appeals of Texas. Beaumont.
Dec. 22, 1932.

Rehearing Denied Dec. 28, 1932.

Orgain, Carroll & Bell and Ewell Strong, Jr., all of Beaumont, for appellant.

Morris & Bennett, of Beaumont, for appellee.

O'QUINN, J.

Appellee sued appellant claiming that appellant, by and through its agents, had made certain oral statements about and concerning him which in law amounted to slander of him, and that as a result of said alleged slander he had been actually damaged in the sum of $50,000, and that said slanderous statements were made under circumstances entitling him to recover exemplary damages in the sum of $25,000.

In substance, he alleged that appellant was a Texas corporation with its principal office and place of business in Galveston, Galveston county, Tex., but that it had an office and agent in Beaumont, Jefferson county, Tex.; that November 18, 1929, he was employed by appellant and was required to and did execute bond payable to appellant in the sum of $100; that he then entered upon his duties as agent for appellant, selling and collecting insurance; that J. H. Pratt was in charge of the Beaumont office of appellant under whom appellee worked; that weekly reports of insurance sold and insurance collected was required to be made; that a dispute arose between Pratt and himself as to the correctness of reports made by appellee, Pratt contending that appellee checked in short, and appellee contending he was not short; that the matter not having been settled to his satisfaction, he, on December 21, 1929, made his final report and quit work for appellant; that he wrote R. W. Rogers, who was manager for appellant at Galveston, Tex., and in charge of all appellant's business in Texas, and requested him to come to Beaumont and settle

the dispute between Pratt and himself; that Rogers did come to Beaumont, and that at their first meeting in Pratt's office, in discussing the matter of appellee's being short, Rogers, in Pratt's presence, said to appellee: "Well, you know when we make this audit, all we'll have to do is to file a complaint against you for embezzlement"; that he, appellee, demanded an audit of his account; that Rogers called J. H. Treaster, appellant's general auditor at Galveston, and Treaster came to Beaumont for the purpose of auditing appellee's account; that in discussing the method and beginning of the audit, while appellee and Treaster were in a car on the street in front of what was known as the "shine parlor," Treaster said to appellee: "Well, when I get through with my report, you know what will happen, the company has indicted one fellow for embezzlement already."

Further allegations were made, among other things, (a) that about January 1, 1930, in appellant's office in Beaumont, Treaster, in talking to O. J. Cowan about appellee, said: "He's fired—we caught him stealing"; (b) that about December 2, 1929, appellee sold a policy of insurance to one Mrs. Ortez, who paid him the premium, and which he turned over to Pratt; that her policy was not delivered, but after appellee had quit the employment of appellant the policy was delivered to Mrs. Ortez with the explanation that the reason of the delay in delivering the policy was that appellee had collected the premium and had not turned it in; (c) that in the early part of January, 1930, an agent of appellant went to the home of appellee and attempted to sell insurance to his wife, Mrs. Moreland, his daughter, Mrs. B. J. George, and one Mrs. Barrett, and, when told that they did not care for insurance in the company, the agent replied: "The company is all right now, a bunch has been let out for their crookedness." All of these allegations were duly and fully enlarged and made applicable by innuendoes.

Appellee further alleged: "That all of the aforementioned acts, charges, accusations, and insinuations of defendant and its duly authorized agents, constitute a course of action on the part of defendant and its duly authorized agents, and a studied design to slander plaintiff, ruin his reputation, destroy his standing in the community and among his fellowmen, and to prevent plaintiff from again entering any financial employment, and said acts, charges, and insinuations were made in an attempt to coerce and intimidate plaintiff into paying sums of money unjustly and illegally charged against him."

Appellant answered by general demurrer, special exceptions, and a general denial. It further specially denied that it had at any time, directly or impliedly, authorized any of its agents to charge or to insinuate that appellee had embezzled funds of appellant, and that, if any such accusations or insinuations were made, the person making same was not acting within the scope of his employment or in the furtherance of appellant's business; that, if such statements were made and in the event they were made within the scope of the agent's employment and in the furtherance of appellant's business, then they could not be made the basis of a suit in slander for damages, for in that the matter was privileged, and, if not privileged, then qualifiedly or conditionally privileged; denied that Rogers made the statement alleged, but that, if he did so, it was made in reference to a matter of and concerning appellant's business wherein there was a dispute between appellant and appellee as to whether appellee had accounted for all the funds collected by him for appellant; that appellant was acting in good faith and without malice in an effort to adjust and clear up appellee's account with appellant; that, if Rogers made the alleged statement, under all the facts and circumstances, it was privileged; that appellee demanded an audit of his account, and appellant's auditor, Treaster, was called from Galveston to make the audit, which showed appellee owed appellant the sum of $17.70; that appellee refused to pay said sum and appellant filed suit against appellee and his bondsmen in the justice court at Galveston, and judgment had for said sum; and that said judgment was res adjudicata of the fact of appellee's owing appellant said sum. Appellant denied that, in its dealings with appellee, it or its agents were actuated by malice or bad faith, but only for the purpose of clearing up the dispute between appellee and appellant, and to collect the amount shown by the audit appellee owed appellant.

By supplemental petition, appellee replied to appellant's answer by special exceptions, general denial of the matters set out in same, save as admitted, and specially that appellant and its agents, acting within the scope of their employment, had exceeded their privilege, if any they had, in taking and picking their opportunity and using the manner and words used in speaking of and referring to appellee, and that the truth, as attempted to be pleaded by appellant, was no defense; that the judgment recovered by appellant in the justice court at Galveston against appellee grew out of a dispute as to the amount of money appellee owed the appellant, if any, and was in no way connected with embezzlement; that there was no testimony at the trial that appellee had embezzled funds of appellant, and that the pleadings on their face showed that there was no charge of embezzlement against appellee; that the suit at Galveston against appellee and the suit here involved were wholly disconnected and the issues wholly different; that the judgment recovered by appellant at Galveston could not be pleaded in bar to appellee's suit because said judgment had been enjoined by an order

of the Fifty-Eighth district court of Jefferson county, Tex.

To this supplemental pleading by appellee, appellant replied by general demurrer, general denial, and specially that the action, if any, taken by the district judge of the Fifty-Eighth district court of Jefferson county, Tex., as to the Galveston county judgment, was wholly void; that said court was without jurisdiction of the matter involved; and that any act upon his part as to such judgment, being a purely collateral proceeding, could in no way affect said Galveston county judgment.

The court sustained appellant's special exception No. 3 relating to appellee's allegation as to a matter alleged to have happened at the home of Mrs. Rigsby to the effect that said allegation stated no cause of action, but overruled all of appellant's other exceptions. All of appellee's special exceptions were overruled.

At the close of the evidence, appellant requested the court to instruct a verdict in its behalf, which was refused. The case was then tried to a jury upon special issues, upon the answers to which the court rendered judgment in favor of appellee in the sum of $5,-000, of which $1,000 was for actual damages and $4,000 for exemplary damages.

The jury found in favor of appellant on the issues as to the matters alleged relative to O. J. Cowan and Mrs. Ortez. The other issues were answered favorably to appellee.

Appellee insists that we should not consider this appeal because, he says, the judgment from which the appeal was taken had become and was a final judgment prior to the appeal. This contention is based upon the assertion that no motion for a new trial was filed during the term of the court at which the judgment was rendered, and hence become final at the expiration of the term. The case was tried in the Sixtieth district court of Jefferson county. This court held two terms in the year—the first beginning the first Monday in January and ending the last Saturday in June, and the second beginning the first Monday in July and ending the last Saturday in December. The case was tried in June, 1931, and judgment entered June 17th. On June 25th appellant filed its formal motion for a new trial. The term of court ended July 5th. No order was entered extending the term of court for any purpose, nor during the term of court was any order made granting leave to file an amended motion for a new trial. On July 14, 1931, appellant, by leave of the court, filed an amended motion for a new trial. The original motion was filed within ten days after the rendition of the judgment, and the amended motion within twenty days after the original motion was filed. Appellee filed motion to strike the amended motion for new trial, and said motion to strike and the amend-

ed motion for a new trial were both heard and overruled on August 12, 1931.

■■ Jefferson county having two district courts with civil jurisdiction only, their procedure is governed by article 2092 of chapter 6 of title 42, Vernon's Annotated Civil Statutes. Sections 28 and 29 of said article read:

"28. *Motion for New Trial.*—A motion for new trial filed during one term of court may be heard and acted on at the next term of court. If a case or other matter is on trial or in process of hearing when the term of court expires, such trial, hearing or other matter may be proceeded with at the next term of the court. No motion for new trial or other motion or plea shall be considered as waived or over-ruled, because not acted on at the term of court at which it was filed, but may be acted on at the succeeding term or at any time which the judge may fix or to which it may have been postponed or continued by agreement of the parties with leave of the court. All motions and amended motions for new trial shall be presented within thirty days after the original motion or amended motion is filed and shall be determined within not exceeding forty-five days after the original or amended motion is filed, unless by written agreement of the parties filed in the case, the decision of the motion is postponed to a later date.

"29. *Time to File Motion for New Trial.*—A motion for new trial where required shall be filed within ten days after the judgment is rendered or other order complained of is entered, and may be amended by leave of the court at any time before it is acted on within twenty days after it is filed."

It is seen that appellant's motion for a new trial was not lost or waived because not acted on at the term of the court at which it was filed. It is further seen that the amended motion was filed and acted on within the time required by law. The court's action in overruling appellee's motion to strike was proper, and his action overruling the amended motion for a new trial was timely. Nevitt v. Wilson, 116 Tex. 29, 285 S. W. 1079, 48 A. L. R. 355.

Special issue No. 2 submitted to the jury required them to find whether appellant's agent and general manager, Rogers, said to appellee, in the presence of J. H. Pratt, in substance, "Well, you know when we make this audit all we will have to do is to file charges against you for embezzlement."

Special issue No. 14 submitted to the jury required them to find what amount of money, if presently paid to appellee by appellant, would reasonably compensate him for actual damages, if any, sustained by him as a direct and proximate consequence of the acts and charges made by appellant, if any.

Special issue No. 15 submitted to the jury required them to find what amount of money,

if any, should be paid appellee as exemplary damages.

Appellant presented to the court and requested that its special charge No. 2 be given to the jury, to wit: "Gentlemen of the Jury: You are instructed that in answering Special Issues Nos. 14 and 15 of the Court's Charge, in assessing the damages if any, that you will allow the plaintiff no damages for any statement, if any, made by defendant's agent Rogers to the effect that he said to plaintiff, 'John (referring to John Pratt) tells me you are more than Twenty ($20.00) Dollars short'; as well as the further statement, if any, 'Well, you know when we make this audit all we'll have to do is to file complaint against you for embezzlement.' "

This requested charge was refused, and its refusal is assigned as error. In this connection it is insisted that, under the allegations of appellee's petition and the evidence, if Rogers, the agent of appellant, did, in the presence of Pratt, another employee and agent of appellant, say "Well, you know when we make this audit, all we will have to do is to file charges against you for embezzlement," same was privileged and would not entitle appellee to judgment for damages.

Briefly, the facts in relation to the matter complained show that in 1925 appellee was located in Beaumont and was working for the Southwestern Life Insurance Company of Dallas, Tex. In the latter part of that year he accepted the district agency for the General Security Sick & Accident Company, his district including Jefferson, Hardin, and Liberty counties. In 1929, he was running a cleaning and pressing outfit. In November of that year he sold out that business and became a special solicitor for appellant. He served in this capacity for two or three weeks, and then, as agent for appellant, went on what he called No. 1 debit on south side of Beaumont. He sold insurance and collected for the insurance sold. He worked for appellant in this capacity until about the first of the year 1930. He would collect insurance on Monday, Tuesday, and Wednesday, and sell new insurance the latter part of the week. J. H. Pratt was agent for appellant and had charge of the Beaumont district. He employed appellee to work for appellant. Appellee had a desk in the company's office, which was generally left unlocked. The books were checked on Wednesday nights and the reports made on the following Saturday. The first week, beginning November 25th, appellee worked with Pratt on his route or territory collecting, and when the report was made Saturday he was some $8 short. He testified: "Yes, sir, the money was turned in every night, every dime, and when we collected the first week Pratt handled practically all of the money, of course, there were pickups I handled myself. I paid it to balance the account."

He further testified: "I called Pratt's attention to it; he said 'you have called your book wrong', he says 'if you call your book wrong this week you will get it back next week', and so the next week the same thing repeated again only not quite so heavy, about $4.00 and some cents. * * * I taken notice of them, it was a discrepancy on the two weeks' sheets, the route book report does not reflect the condition of the account, but the two weeks' sheet does reflect the condition, consequently I noticed there has been some collection entered in my book I had not called so I call Pratt's attention to it. He said 'it's an error, I will correct it.' I went out again and the same thing happened the week of the 9th."

And again: "Yes, I collected the 9th, 10th, and 11th. I left the book in the office and Saturday morning when I go to call the report he and the girl in there had made a new book and torn up the old book. His excuse was it was so old and dirty the accounts were hardly discernible. As I understood it, nobody was to handle it except the agent, or tear it up. I told them I was going to quit and wouldn't accept it. Pratt says that 'if there is any deficiency in it I will make it up.' There was only about $3.00 and something deficiency so when I make out my two weeks' sheet I discovered who those were. We had a family on Corley Street that should have been lapsed two or three weeks before I quit. They were four weeks in arrears, and they were still four weeks in arrears when I turned the book over. I never saw the people until I carried Treaster there. There had been four weeks entered in my book on that family."

We will not here set out more of the testimony. A number of witnesses testified for each party. The statement of facts covers 151 pages, with 30 more pages of exhibits. We have set out the substance of sufficient of appellee's testimony to give an idea of the origin and nature of the controversy. Additional facts will be stated in discussing the several questions.

The undisputed evidence shows Rogers was the general manager of appellant company with his office at Galveston, Tex. As such, it was his duty to look after, manage, and protect the interest of his company. Pratt was the agent in charge of the company's business in the Beaumont district, and appellee worked for the company under Pratt. It was the duty of Pratt likewise to look after, promote, and protect the interest of appellant company. It is further undisputed that, while appellee was working for appellant, a dispute arose between Pratt and appellee as to whether appellee was short in his account in money by him collected and which should have been turned over to Pratt. The dispute reached such state that appellee wrote Rogers and requested him to come to Beaumont to settle the dispute. Rogers, in re-

**620**

sponse to such request, went to Beaumont and in the office of the company's agent, Pratt, saw appellant, and there in the presence of Pratt the conversation took place. Rogers denied making the statement charged, but the jury found that he did so. All persons present were interested in the matter for which they had come together. . It being the duty of Rogers to protect the interest of his company and being present there for that purpose, and also at the request of appellee, the statement having been made in the discharge of his duty, was privileged, and appellant is not liable for damages in consequence thereof, unless the statement was made with malice or in bad faith. Simmons v. Dickson, 110 Tex. 230, 233, 213 S. W. 612, 218 S. W. 365; International & G. N. R. Co. v. Edmundson (Tex. Com. App.) 222 S. W. 181; Missouri Pac. Railway Co. v. Richmond, 73 Tex. 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794; Western Union Telegraph Co. v. Buchanan (Tex. Civ. App.) 248 S. W. 68.

But appellee insists that Rogers was actuated by malice in making the statement, and the jury so found. We have carefully searched and considered the record and we do not believe the issue of malice is raised by the evidence. The occasion being privileged, the presumption of good faith obtained. The burden was upon appellee to rebut this presumption. Rogers did not seek appellee, but was present at appellee's request. The meeting was in the office of appellant's agent, Pratt, and only Rogers, Pratt, and appellee were present. It is not contended that any one else was present, or that any one else heard the statement. The audit demanded of Rogers by appellee was granted, and, while the correctness of the result is disputed by appellee, it showed him short $17.70. Appellee was given the privilege of paying this off and ending the matter, but he refused. Suit was filed against him and his bondsmen for the debt and judgment had in favor of appellant. This judgment is conclusive of the fact that appellee owed that amount. We think that the record, beyond dispute, shows that appellant's agents acted in good faith in the matter. At the very most that can be said, the evidence merely raised a surmise or suspicion of the existence of facts sought to be shown showing malice, and this falls far short, in legal contemplation, of being any evidence of malice. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059. The contention of appellee and the findings by the jury are without evidence to support them.

What we have said disposes of the matter as to what was alleged to have been said to appellee by J. H. Treaster, auditor for appellant, to wit: "Well, when I get through with my report, you know what will happen, the company has indicted one agent for embezzlement already." Treaster was appellant's auditor, and it was his duty to check the records of appellant's agents and safeguard its finances. Appellee demanded of Rogers that his books and account be audited. In compliance with this request, Treaster was called to Beaumont, and he and appellee were beginning the audit when, as told by appellee, they went across the street from the company's office to in front of the "shine parlor." They were talking about the route book when, appellee testified, Treaster said: "I'm going to tell you one thing, the company has just indicted one man for embezzlement, and that's what they are going to do for you," whereupon appellee said he got out of the car and said to Treaster, "Get out of the car and we'll settle it right now," and Treaster laughed and said, "I don't mean that, get on back in the car," and appellee got back in the car and they went on to check the route. The language charged to Treaster was "Well, when I get through with my report you know what will happen, the company has indicted one fellow for embezzlement already." Appellee alleged that, at the time Treaster made the remark charged, people were passing on the sidewalk, near the car and within hearing distance of said remarks and did hear said remarks. There is no evidence that any person other than appellee heard any portion of the conversation. True, appellee testified, when asked, "Did you see any of them turn or look or did any of them turn or look," that he never "paid so much attention to it." "I had gotten out of the car. I'm sure they did. He certainly should have attracted somebody's attention with plenty of them passing at that time." He further testified that Treaster seemed to be angry and was talking very loud. This is absolutely all that was shown relative to any one hearing what Treaster said. It was only appellee's opinion as to whether any one heard the remark. It amounts to no evidence. Treaster being in the discharge of a duty he owed to his employer, the checking of the records and accounts of his employer's agents and in protecting its finances, and also being present for the purpose of making said audit at the request of appellee, the remark, if made, being made to appellee alone, it not appearing that any third person heard said remark, the occasion was privileged, and appellant is not liable in damages therefor, unless the statement was made with malice or in bad faith. See authorities cited supra.

It is insisted that, in making the statement, Treaster was actuated by malice. The jury so found, and also found that the remark was made in the presence and hearing of other people. We think that all the facts negative malice, even appellee's testimony, that he "never paid so much attention to it," and that when Treaster laughed and said "I don't mean that, get back in the car," and appellee accepted the explanation of Treaster and did get back in the car, and they did work

together in checking the route for several days, shows no malice and that appellee himself was not seriously impressed with the occurrence. Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059. The contention and the finding by the jury are without support in the evidence.

Appellee cites us to the case of Perry Bros. Variety Stores v. Layton, 119 Tex. 130, 25 S.W.(2d) 310, as controlling this case. There the slanderous statements were made in a general merchandise store open to the public, by the manager of the store, and in the presence and hearing of customers who were there on the implied invitation of the owner of the store, and who had no interest in the subject-matter of the statements. The slanderous statements were actually heard by the third parties—customers—while in the instant case the statement was out in the street and only those interested were present and heard the statement.

Special issue No. 11, submitted to the jury, reads: "Did defendant's agent, Treaster, in referring to Mr. Moreland, state to Mrs. Moreland in words substantially as follows: 'The company is all right now, I understand he and a bunch have been let out for their crookedness.'"

The jury answered, "Yes." They further found that the statement was made with malice.

■ Appellee, in his petition, alleged "that during the early part of January, 1930, an agent of defendant went to the home of plaintiff, Moreland, and on the pretense of attempting to sell insurance to Mrs. Moreland, Mrs. B. J. George and Mrs. Barrett, and the agent when told they didn't care for any insurance, said 'the company is all right now, a bunch has been let out for their crookedness', thereby charging and inferring that Moreland had been and was crooked and had been fired for crookedness, and that he could not be trusted." Mrs. George was the daughter of appellee. Mrs. Barrett faded from the scene and it appears did not hear any of the conversation. Neither Mrs. Moreland nor her daughter, Mrs. George, knew the party, and he did not tell them his name. They say he said he was selling insurance for appellant. It was attempted to be shown that Treaster, appellant's auditor, was the man, but neither Mrs. Moreland nor Mrs. George identified him as such. Mrs. Moreland, when asked if she could identify the man, said: "I don't know whether I could or not," and, when told to look around and see if the man was present, she said "this man smoking the cigarette is very much the type of man he was." The man to whom she referred was Treaster. Mrs. George testified that she did not know the man, and that there was not anything outstanding about him that would have made her notice particularly; that the only thing she noticed was that he looked through his eyebrows, you could not look straight into his face. Treaster testified that he had never met Mrs. Moreland, had never been to her home, and had never seen her before the trial. We do not think there was sufficient identification of the alleged agent —the mere fact that he may have stated he was appellant's agent does not prove agency, and there being no competent or probative evidence that Treaster was the man, no showing of agency appears.

■ Furthermore, if it had been shown that the man was an agent of appellant, in order to have made appellant liable for any libelous statement he may have made, it must have been shown that the statement was made in connection with and as a part of the work he was authorized to do as such agent of appellant. This was a question of fact. Appellant requested the court to give its special charge No. 29, presenting such issue to the jury to be found, which the court refused. This is assigned as error. If there had been any conflict in the evidence as to this question, the refusal of the requested charge would have been reversible error, Producers' Refining Co. v. Frazier (Tex. Civ. App.) 283 S. W. 880, but we think the undisputed facts, as shown by the testimony of Mrs. Moreland and her daughter, Mrs. George, show that the remark, if made by an agent of appellant, was not made in connection with and a part of the work he was authorized to do by appellant. His work was to sell insurance, not to adjust controverted claims relating to insurance collected, or to pass upon the honesty of any other agent, past or present. If an agent selling insurance for appellant made the statement charged, it was without the scope of his authority to represent appellant, entirely outside of the duty he was to perform, and that being so, no liability against appellant resulted. Schulze v. Jalonick, 18 Tex. Civ. App. 296, 44 S. W. 580, 586.

■ The jury awarded $4,000 exemplary damages to appellee. We have held that, under all the facts, actual damages were not recoverable. In the absence of actual damages, exemplary damages may not be recovered.

■ The jury, in answer to a special issue, found that appellant and its agents, in making the slanderous statements alleged, pursued a design to slander and coerce appellee into paying the sum of $17.70, the amount appellant contended appellee owed it for collections not reported. The charge submitting the issue was duly excepted to and its submission is assigned as error, and the jury's finding in answer thereto is assailed as without support in the evidence.

We do not believe the evidence raised the issue. We think the record, as a whole, evidences good faith on the part of appellant in its claim of shortage in the account of appellee, and its efforts to collect same. The dis-

pute arose between appellee and another of appellant's representatives as to whether appellee was short. At his request appellant's manager came from Galveston to investigate and settle the matter. At his request appellant's auditor from Galveston was brought to audit the claim. The audit disclosed a balance due by appellee of $17.70. Appellee was requested to pay this amount, and upon his refusal to do so, suit was filed and judgment had for the amount. We think the allegations and the jury's finding are without support in the record.

Other questions are raised, but under our holdings above they need not be discussed. Believing that no liability against appellant was shown, and the case having been fully developed in the trial court, the judgment is reversed and here rendered for appellant.

Reversed and rendered.