Dave HICKS et al., Appellants,

v.

John WRIGHT and Thomas C. Hart, Appellees.

No. 1055.

Court of Civil Appeals of Texas, Tyler.

Feb. 16, 1978.

Motion for Rehearing Overruled March 30, 1978.

Rehearing Denied April 27, 1978.

Karl Rubinstein, Stalcup, Johnson & Miller, Robert Blumenthal, William B. Dawson, Carrington, Coleman, Sloman, Johnson & Blumenthal, Randy Taylor, Dallas, for appellants.

David S. Kidder, William T. Hankinson, Thompson, Knight, Simmons & Bullion, Chandler Lloyd, Biggers, Lloyd, Biggers, Beasley & Amerine, Dallas, for appellees.

McKAY, Justice.

This is a suit to recover money paid by John Wright, appellee,[1] to extinguish a debt on a promissory note signed by Mike Hicks, as payor, and Dave Hicks, as guarantor. Based on the jury's findings, the trial court entered judgment for appellee for actual damages in the amount of $70,380.47, an amount stipulated to by the parties, and exemplary damages totalling $100,000.00. The court also entered judgment for appellee in the amount of $76,380.47 on the basis of equitable subrogation. It is from this judgment that appellants, Dave Hicks, Dave Hicks Company, Inc., Mike Hicks, Hicks Investments, Inc. and Eugene Goode and Goode Construction Company, have perfected their respective appeals.

This case is rather complex in that it involves several causes of action against various individuals and their respective corporate entities. Appellee's petition alleged several causes of action, including fraud, conspiracy to commit fraud, conspiracy to "insure around," equitable subrogation and a claim for bad checks claiming that all of the appellants engaged in a conspiracy to deceive and defraud John Wright by induc-

1. Where the term "appellee" appears in this opinion, it refers only to John Wright.

ing his employee, Barbara Alexander, to issue title policy binders on certain residential lots without obtaining a release of the first lien and then using the binders as leverage to force him to pay the remaining balance due on two promissory notes, secured by a lien on the lots, signed by Hicks Investments, Mike Hicks and Dave Hicks. At the time of the alleged conspiracy the promissory notes were owned by Dave Hicks Company.

Each appellant filed an answer, answering also for his respective corporate entity. All appellants alleged that appellee had executed a release, that he had no cause of action as an individual, but only as agent of Commercial Title and Abstract Co., that he had actual knowledge of facts sufficient to put him on notice, and that his agent's knowledge was imputed to him. Appellants Goode and Mike Hicks also plead that appellee suffered merely as a volunteer and that they never dealt with appellee except in their capacities as representatives of their respective corporations. Goode and Dave Hicks plead the two year statute of limitations as a bar in addition to the fact that appellee failed to state a cause of action. Mike Hicks also plead that any statements made to appellee's agent were merely promises to do certain acts based on future contingent events and that any payment by appellee individually was merely a sham to avoid application of estoppel to Commercial Title. Additionally, Dave Hicks plead that he was merely a guarantor on the notes, that the collateral had been released, and that appellee ratified his agent's actions by accepting his commissions. Dave Hicks also filed a cross-action against appellee John Wright and Thomas C. Hart, President of Commercial Title and Abstract Co. Appellants do not complain of the take-nothing judgment in the cross-action.

The case was submitted to the jury on over one hundred special issues.[2] In substance, the jury found that Eugene Goode and Mike Hicks, each individually, perpetrated a fraud upon John Wright and that $50,000.00 from Eugene Goode and $27,-000.00 from Mike Hicks would reasonably compensate John Wright for damages as a result of the fraud. They also found that Eugene Goode and Mike Hicks should pay to John Wright as exemplary damages for such fraud the amount of $25,000.00 each.

It was also found that Eugene Goode and Mike Hicks induced Barbara Alexander, appellee's agent, to illegally issue title policy binders on certain residential lots and that $5,000.00 from Goode and $5,000.00 from Hicks would reasonably compensate John Wright for his damages as a result of their actions.

The jury also found that Eugene Goode, Mike Hicks and Dave Hicks conspired to induce issuance of the title policy binders and force John Wright or Commercial Title to pay the balance of the notes and awarded $25,000.00 to appellee as damages for the conspiracy. Additionally, the jury awarded John Wright exemplary damages of $50,-000.00 as against Dave Hicks for the latter's part in the conspiracy. It was also found that their respective corporations were the alter egos of the individual defendants.

The jury further found that John Wright knew or should have known that Barbara Alexander was issuing title policy binders without obtaining a release of the first lien; that he retained attorney's fees on the closing transactions; that his failure to use due diligence proximately caused his injury; and that Barbara Alexander intended to carry out the duties of her position in issuing the title policy binders on the lots in question.

In substance, the court rendered judgment that John Wright recover all of those damages, actual and exemplary, set out above; that where damages were awarded against an individual defendant, they were also awarded jointly and severally against his respective corporation; that John Wright recover actual damages of $8,809.47

---

2. Although there were 84 numbered special issues, special issues 3 and 16 contained numerous subparts.

from Eugene Goode and $18,000.00 from Mike Hicks for checks which they gave to Commercial Title which were not honored; and that John Wright recover actual damages of $76,380.47 on the basis of equitable subrogation, jointly and severally, against Mike Hicks, Hicks Investments, Inc., Dave Hicks and Dave Hicks Company, Inc. The court further found that, by stipulation of the parties, actual damages on those actions submitted to the jury were limited to $70,-380.47 and entered judgment for that amount, plus interest, together with those exemplary damages found by the jury. At the same time the court entered judgment for those actual damages found by the court. All defendants duly perfected their appeals.

We affirm in part, reform in part and reverse and render in part.

In 1968, Mike Hicks purchased some raw land for residential development, and financed the purchase at the First National Bank of Fort Worth, the bank taking as security for its loan a first lien on all of the property. This initial loan was in the principal amount of $215,000.00. Only Mike Hicks' signature appears on this note, dated September 8, 1968.

On January 6, 1972, the bank made a loan of $88,000.00 on additional property in the same subdivision, subordinate to the first note. The second note was signed by Mike Hicks, as President of Hicks Investments, Inc. and Dave Hicks (father of Mike Hicks) as guarantor. Subsequently, there were extensions and renewals of both of these notes. All of these extensions were signed by Mike Hicks, individually and as President of Hicks Investments, and Dave Hicks as guarantor.

Eugene Goode, brother-in-law of Mike Hicks, was engaged in the residential construction business. In 1972, Goode purchased some 14 lots from Mike Hicks and began using the Grand Prairie office of Commercial Title and Abstract Company for his title work. Appellee John Wright was branch manager at this office. Rather than pay cash to Mike Hicks for the lots, Goode postponed payment until he had built and sold the house on the particular lot. It is the usual business practice to obtain the interim financing needed for construction of the houses by obtaining an interim title policy (binder) guaranteeing to the interim lender that there are no prior liens outstanding. To get a binder, it is necessary to obtain the release of all prior liens. In this case, the prior lien was held by the bank to secure the purchase money loan Mike Hicks used to buy the land. According to the agreement with the bank, before construction could start on a lot, the builder (Goode or Mike Hicks) had to pay either $3,000.00 or $3,925.00, depending on the lot, to the bank through Commercial Title, obtain a release of lien on that lot and then obtain a title binder.

Barbara Alexander, an employee of John Wright, was the "closer" in the Grand Prairie office of Commercial Title. She handled all transactions with Goode and Mike Hicks beginning in 1972.

It is unclear on what date in 1972 Eugene Goode first approached Barbara Alexander concerning the issuance of title policy binders without paying off the first lien. Nor is it clear how they communicated, whether by phone or in person. Also, there is some conflict as to the content of Goode's statement to Mrs. Alexander. Barbara Alexander subsequently issued title policy binders on several lots without first obtaining a release of the prior lien.

Mike Hicks accompanied Goode to Commercial Title on several occasions. At some point Barbara Alexander began to follow the same illegal procedure with Mike Hicks.

For at least some of the lots, Mike Hicks and Goode gave Barbara Alexander checks in the name of their corporations to be held in the file and not presented. When these checks were later presented for payment by John Wright, Mike Hicks had stopped payment on his checks and Goode's checks were returned due to insufficient funds. The total of Hicks Investments, Inc.'s checks was $18,000.00; Goode Construction's total was $8,809.47.

On November 2, 1973, Barbara Alexander told John Wright that she had followed this same procedure with another builder not a party to this lawsuit. Wright then fired her and began a complete review of the files. The records showed that 47 title policy binders had been issued to Mike Hicks or Goode without the release of the prior lien. Of those 47 lots, 23 remained with the prior lien outstanding at the time of Wright's investigation.

On November 10, 1973, John Wright met with Mike Hicks and Goode. It was determined at this meeting that neither Mike Hicks nor Goode was able to pay the bank an amount which would release the prior liens on the 23 lots in question.

On November 11, 1973, John Wright telephoned Dave Hicks to inform him of the problems which had arisen with Mike Hicks and Goode. There was another phone conversation between the two about a week later.

Dave Hicks Company, Inc., of which Dave Hicks owned 80% of the stock and was president, then purchased the two first lien notes in question from First National Bank of Fort Worth and received an assignment of the lien securing those notes.

About the 27th or 28th of November, at a meeting arranged by Wright, and attended by Wright, Thomas C. Hart, President of Commercial Title, and Chandler Lloyd, its attorney, Dave Hicks refused to pay his son's checks or to release or subordinate the liens which Dave Hicks Company had been assigned when it purchased the notes from the bank. W. A. "Buster" Standifer, an attorney, represented Dave Hicks at this meeting. Dave Hicks, Will Barber, and Bonnie Jachalke were also present.

On November 30, 1973, John Wright executed a promissory note in the principal amount of $75,000.00 to Midway National Bank of Grand Prairie as payee. These funds were used to purchase a cashier's check which was then given to Commercial Title in the amount of $76,380.47.

A check in the amount of $76,380.47, dated December 3, 1973, from Commercial Ti-tle to Dave Hicks Company, Inc. and its attorney, W. A. Standifer was delivered in exchange for the release of the first liens on the 23 lots in question. Additionally, a release of all claims against Dave Hicks and Dave Hicks Company, Inc., dated December 3, 1973, was delivered to Standifer. The release was signed by Thomas C. Hart for Commercial Title and Abstract Co.

A summary of appellants' points of error would prove to be rather lengthy. Appellants, Dave Hicks, Mike Hicks and Eugene Goode, assign 42, 35 and 51 points of error, respectively.

■ In examining those points relevant to the legal sufficiency of the evidence, or "no evidence" points, we may consider only the evidence and inferences in support of the jury's finding, while disregarding all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). In examining the factual sufficiency of the evidence, we must consider the whole record to determine if the jury's answer is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

## FRAUD

We will deal first with those points of error relevant to the findings of fraud on the part of appellants Mike Hicks and Eugene Goode.

■ The award of damages for fraud against Goode and Mike Hicks was based solely on the jury's separate findings that each appellant fraudulently represented to Barbara Alexander that Dave Hicks would pay, if necessary, any outstanding first liens on any of the lots in issue. Therefore, we need not consider appellants' points of error dealing with the jury's failure to find that they fraudulently represented to Barbara Alexander that they, individually, would pay the outstanding first lien existing on any of the lots in question prior to the

closing of the sale of any such lot.[3] Both appellants challenge the legal and factual sufficiency of the evidence in support of the jury's findings of fraud. In order to state a cause of action for fraud the plaintiff must show that the defendant made a false representation of a material fact with intent to induce the plaintiff to act upon it and that the plaintiff did so rely upon it and thereby suffered damages to his injury. *Ryan v. Collins*, 496 S.W.2d 205, 210 (Tex.Civ.App.—Tyler 1973, writ ref'd n. r. e.); *Long v. Smith*, 466 S.W.2d 32 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.); 25 Tex.Jur.2d Fraud and Deceit, sec. 13 (1964) (Supp.1977), pp. 626–628. It necessarily follows that, in order to constitute actionable fraud, the representation complained of must concern a material fact as distinguished from a mere matter of opinion, judgment, probability, or expectation. *Jeffcoat v. Phillips*, 534 S.W.2d 168, 171 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n. r. e.); *Ryan v. Collins*, supra; *Fossier v. Morgan*, 474 S.W.2d 801 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ).

The only evidence of any alleged representation by Eugene Goode is a statement made by Barbara Alexander in her deposition testimony. Viewing the statement in the light most favorable to the jury's finding, Goode told Barbara Alexander, "Now, as well as I know, Dave Hicks' money was behind it and he is on the note and his little boy is not going to have any problems."

However, when the statement is read in context, it is unclear whether Barbara Alexander attributes the utterance to Goode or if she is making the statement herself. In ruling on the "no evidence" point, we will assume the statement is attributed to Goode. Even so, the statement is nothing more than an opinion, or expectation of future events, and is no evidence that Goode represented to Barbara Alexander that Dave Hicks would pay the outstanding first liens. It amounts to nothing more than mere conjecture on the part of Goode that if Mike Hicks was unable to pay off the first lien on the lots, his father would probably take care of it because the latter's name was on the notes.

Accordingly, we hold that there is no evidence to support the jury's findings that Eugene Goode falsely represented to Barbara Alexander that Dave Hicks would pay any outstanding first liens on the property in question. Therefore, we also hold there is no evidence to support any of the jury's findings against appellant Goode on the issue of fraud, including that of exemplary damages.

In view of our holding that there is no evidence in the record to support the jury's findings, we do not reach the factual sufficiency point. If the point were reached, however, we would hold that there is insufficient evidence in the record to support the jury's findings of fraud against Eugene Goode.

Appellant Eugene Goode's points of error 1, 4, 7, 10, 13, 16, 20, 23 and 26 are sustained.

The trial court instructed the jury that the testimony of Barbara Alexander could not be considered as evidence against Mike Hicks. However, her testimony is the only evidence of any alleged fraud. In light of that fact, appellee would have us apply Goode's statements to Mike Hicks by inference. That is, because he accompanied Goode to Commercial Title on several occasions and received title binders without release of the first lien, Mike Hicks made the same fraudulent representations. Such inferences go beyond the scope of the "no evidence" test. There are no representations or actions of Mike Hicks presented in the record.

Accordingly, we hold that there is no evidence to support the jury's findings that Mike Hicks falsely represented to Barbara Alexander that Dave Hicks would pay any outstanding first liens on the property in question. Therefore, we also hold that there is no evidence to support any of the jury's findings against appellant Mike Hicks on the issue of fraud, including that of exemplary damages.

---

**3.** Mike Hicks' points of error 13–16; Goode's point of error 19.

Appellant Mike Hicks' points of error 1, 3, 5, 7, 9, 11, 17 and 19 are sustained.

In view of our holding that there is no evidence in the record to support the jury's findings, we do not reach the factual sufficiency point. If the point were reached, however, we would hold that there is insufficient evidence in the record to support the jury's findings of fraud as against Mike Hicks.

## INSURING AROUND

Appellant Mike Hicks contends that there is no evidence, or, in the alternative, insufficient evidence to support the jury's findings that he induced Barbara Alexander to "insure around" existing liens, thereby causing damage to John Wright in the amount of $5,000.00.

As stated earlier, we may not consider the deposition testimony of Barbara Alexander as evidence against Mike Hicks. Appellee Wright argues that Mike Hicks is "guilty by association." The only evidence of any inducement by anyone was that evidence of Eugene Goode's conversation with Barabara Alexander. Mrs. Alexander testified that Goode said he would take his business elsewhere if she didn't "insure around"; that she had nothing to worry about. She also testified as to the statement by Goode which referred to Dave Hicks. Appellee would have us impute these same statements to Mike Hicks because (1) Goode and Mike Hicks were building houses in the same area or addition, (2) Mike Hicks was selling lots to Goode, but postponing payment until the house had been built, and (3) Mike Hicks was also obtaining interim title binders without paying the first liens.

However, without Barbara Alexander's testimony we are left only with the fact that Goode and Mike Hicks were associated together in business and that both obtained

interim title binders without paying the first liens. There is documentary evidence of both of these facts contained in John Wright's office files which were admitted into evidence. Without Barbara Alexander's testimony we are left with no evidence as to why she issued the interim title binders to Mike Hicks.[4] While Mike Hicks may have induced her to issue the interim binders, the record before us does not bear out such a fact. Therefore, we hold that there is no evidence to support the jury's findings that Mike Hicks induced Barbara Alexander to "insure around" existing liens, that is, issue title policy binders without payment of the first liens.

Appellant Mike Hicks' points of error 21, 23 and 25 are sustained.

■ In view of our holding that there is no evidence in the record to support the jury's findings, we do not reach the factual sufficiency point. If the point were reached, however, we would hold that there is insufficient evidence in the record to support the jury's findings that Mike Hicks induced Barbara Alexander to "insure around" existing liens, causing damage to John Wright in the amount of $5,000.00.

Appellant Eugene Goode has no point of error contesting the judgment against him based on his inducing Barbara Alexander to insure around.

## CONSPIRACY

All the appellants challenge the jury's findings that Eugene Goode, Mike Hicks and Dave Hicks conspired to induce Barbara Alexander to issue title binders and to force John Wright or Commercial Title to pay the indebtedness, thereby injuring John Wright. The appellants contend that the evidence is legally and factually insufficient to support the jury's finding.

The Supreme Court in *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas*

---

4. In relation to the rule on consideration of a "no evidence" point we must disregard all evidence contrary to the jury's finding. In actuality, Mrs. Alexander testified: "Well, needless to say that I felt it would be a feather in my hat if we got the Hicks business . . . . And, like

I say, I was always under the assumption, because of word of mouth from other people, and I am saying this as flat as I can remember it, because of word of mouth of other people that Mike Hicks and his father were very well off."

*Corp.,* 435 S.W.2d 854, 856–858 (Tex.1969), stated the law of civil conspiracy as applied in this State:

"A civil conspiracy has been defined by this court as 'a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.' *Great Nat'l Life Ins. Co. v. Chapa,* 377 S.W.2d 632, 635 (Tex.1964); *State v. Standard Oil Co.,* 130 Tex. 313, 107 S.W.2d 550 (1937). But the gist of a civil conspiracy is the damage resulting from commission of a wrong which injures another, and not the conspiracy itself. *Starling v. Hill,* 121 S.W.2d 648 (Tex.Civ.App.—Waco 1938, no writ); *Shelton v. Lock,* 19 S.W.2d 124 (Tex.Civ.App.—Amarillo 1929, writ dism'd); 16 Am.Jur.2d 149, Conspiracy, sec. 344.

.     .     .     .     .

"One without knowledge of the object and purpose of a conspiracy cannot be a co-conspirator; he cannot agree, either expressly or tacitly, to the commission of a wrong he knows not of.  .  .  . [O]ne of the essential elements required to establish a civil conspiracy is 'a meeting of the minds on the object or course of action.' And, of course, one without knowledge of a conspiratorial plan or scheme to injure another by the commission of a particular wrong cannot share the intent to injure such other.

"The conspiracy alleged  .  .  . in this case may be analogized to a conspiracy to defraud. We think the Supreme Court of Tennessee announced a sound rule of law to be applied in such cases in *Brumley v. Chattanooga Speedway & Motordrome Co.,* 138 Tenn. 534, 198 S.W. 775, 776 (1917), when it said:

'A "conspiracy to defraud" on the part of two or more persons means *a common purpose,* supported by a concerted action to defraud, *that each has the intent to do it,* and that it is common to each of them, and that each has the understanding that the other has that purpose.' [Emphasis theirs.]

"The general governing rule is stated as follows:

'There must be an agreement or understanding between the conspirators to inflict a wrong against, or injury on another, a meeting of the minds on the object or course of action, and some mutual mental action coupled with an intent to commit the act which results in injury; in short, there must be a preconceived plan and unity of design and purpose, for the common design is of the essence of the conspiracy.'

"Cf. *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 581 (1963).

.     .     .     .     .

"We recognize that proof of a conspiracy may be, and usually must be made by circumstantial evidence, *Jernigan v. Wainer,* 12 Tex. 189 (1854), but vital facts may not be proved by unreasonable inferences from other facts and circumstances .  .  .; or, as has often been said by this court, a vital fact may not be established by piling inference upon inference .  .  .. To permit proof in this fashion, would violate the rule of *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059 (1898), which requires proof of any vital fact by evidence amounting to something more than a mere scintilla."

Although circumstantial evidence may be sufficient to prove the existence of a conspiracy, disconnected circumstances any one of which, or all of which, are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy. *Fun Time Centers, Inc. v. Continental National Bank,* 517 S.W.2d 877, 883 (Tex.Civ.App.—Tyler 1974, writ ref'd n. r. e.); *Switzer v. Joseph,* 442 S.W.2d 845 (Tex.Civ.App.—Austin 1969, no writ).

A review of the evidence which appellee contends constitutes evidence of the alleged conspiracy is in order.

Appellee alleges that Barbara Alexander's testimony establishes the existence of an "agreement/conspiracy" between Goode and herself. He argues that such is established by the documents pertaining to such

lots. It is true that these same documents show Mike Hicks to be receiving title binders without paying off his first liens.

Appellee would have us infer Mike Hicks' guilty knowledge from the following circumstances. First, Mike Hicks and Goode were building lots in the same subdivision and Goode was buying his lots from Mike Hicks.

Mike Hicks was not receiving payment for his lots until the house had been built and accompanied Goode to Commercial Title when the latter dealt with Barbara Alexander. John Wright testified that, at the November 10, 1973, meeting, "Mike [Hicks] said that he knew they were in trouble." Based on this evidence, appellee infers to Mike Hicks knowledge of the alleged conspiracy and, from that knowledge, infers participation in the alleged conspiracy to violate Art. 9.08, Insurance Code, V.A.T.S. Appellee then infers a tacit agreement between Mike Hicks and Eugene Goode to "[obtain] what was, in effect, a loan of $3,000 to $4,000 per lot by postponing payments on the lot loans."

As to Dave Hicks' part in the alleged conspiracy, the evidence shows that Buster Standifer, Dave Hicks' attorney, received a title report on three lots, not involved in this suit, showing the first liens on those lots to be outstanding. Standifer testified as to Dave Hicks' purchase of the interim notes on four lots, including the three on which he had a title report, in October of 1973. Based on that evidence, appellee infers to Dave Hicks knowledge of his son and Goode having obtained interim loans and title binders without paying off the first liens.

Appellee infers Dave Hicks' knowledge from other evidence. Dave Hicks had long been a long time customer of the First National Bank of Fort Worth. The bank knew Dave Hicks was guarantor on both notes. Appellee infers to the bank knowledge of Mike Hicks having obtained interim binders without release of the first liens from a "Memorandum to Loan Application and Review Committee," dated September 1, 1969. Therefore, based on the bank's

inferred knowledge, appellee infers that the bank informed Dave Hicks of his son's business practices.

Appellee also infers Dave Hicks' knowledge from the constructive knowledge of Bonnie Jachalke, secretary-treasurer for both Hicks Investments and Dave Hicks Company. If she knew that Goode and Mike Hicks were paying the lot loans out of the closing proceeds, appellee contends Bonnie Jachalke had constructive knowledge that Mike Hicks had induced Commercial Title to insure around. From there, appellee would infer that Bonnie Jachalke informed Dave Hicks of the alleged acts.

Lastly, appellee claims Dave Hicks' knowledge is to be inferred from the alleged statement of W. A. Standifer at the meeting in late November 1973. John Wright testified that Standifer said: "We've known about this for a long time. We've got you where we want you. Someone is going to pay and it's not going to be us."

Appellee contends that Dave Hicks' participation in the conspiracy is evidenced by his purchase of the promissory notes in the name of his company, by Standifer's statement, and also at the late November 1973, meeting by Dave Hicks' refusal to subordinate his lien and pay to Commercial Title the amount of Mike Hicks' checks which had not been honored. Appellee contends that these alleged acts of conspiracy forced John Wright to pay off the liens on the lots in question. Dave Hicks Company was paid $76,380.47 allegedly by John Wright.

■ In any civil conspiracy there must be a meeting of the minds as to the object or course of action. In this case, all the alleged conspirators must have agreed, expressly or tacitly, to force John Wright to pay off the loans. In our opinion, there is no evidence of any agreement, express or tacit, between the alleged conspirators to force John Wright to pay any amount.

The basis of appellee's conspiracy claim is an "agreement/conspiracy" between Barbara Alexander and Eugene Goode. There is no evidence that Barbara Alexander in-

tended any harm to anyone as a result of her issuance of the title binders without release of the first liens on the lots. In fact, the only evidence on that point is directly to the contrary. Barbara Alexander testifies in her deposition, on which appellee relies, that she issued the binders to keep Goode from taking his business elsewhere. In other words, she issued the binders to benefit Commercial Title, and therefore John Wright. We must note here that any finding of a conspiracy on the part of Mrs. Alexander would be in direct conflict with appellee's alleged cause of action for fraud. No conspiracy existed between Barbara Alexander and Eugene Goode.

Since the court excluded Barbara Alexander's testimony as against Mike Hicks we may not consider her deposition testimony as against him. In our opinion were we to take her testimony into consideration there is still no evidence of any agreement between the alleged conspirators. Mike Hicks' statement that he knew they were in trouble indicated nothing more than a realistic appraisal of his situation.

Dave Hicks' knowledge of the conspiracy can only be established by piling inference upon inference, i. e., his purchase of the notes in his company's name, refusal to subordinate his liens and pay off his son's checks. His actions in this regard are just as consistent with a lawful purpose as with an unlawful undertaking and are insufficient to establish a conspiracy.

■ Accordingly, we hold that there is no evidence to support the jury's findings that Eugene Goode, Mike Hicks, and Dave Hicks conspired to induce Barbara Alexander to issue title policy binders on the lots in issue without release of the first lien and force John Wright or Commercial Title to pay off the notes secured by said lots, causing damage to John Wright in the amount of $5,000.00.

In view of our ruling that there is no evidence to support the jury finding of conspiracy, we do not reach the factual sufficiency point. If we were to reach the point, however, we would hold it to be insufficient.

Appellant Dave Hicks' points of error 5, 6 and 27 are sustained. Appellant Mike Hicks' points of error 27, 29 and 31 are sustained. Appellant Eugene Goode's points of error 30, 33 and 36 are sustained.

■ Based upon its finding of Dave Hicks' malice in conspiring, the jury awarded exemplary damages of $50,000.00 against him. However, it is well settled that exemplary damages may not be recovered unless the plaintiff is shown to have sustained actual loss. *Girard v. Moore*, 86 Tex. 675, 26 S.W. 945, 946 (1894); *First Texas Prudential Ins. Co. v. Moreland*, 55 S.W.2d 616, 621 (Tex.Civ.App.—Beaumont 1932, writ dism'd); *Phillips v. Wertz*, 546 S.W.2d 902, 907 (Tex.Civ.App.—Dallas 1977, writ ref'd n. r. e.). Based on our ruling that no evidence existed as to any conspiracy and hence no evidence of any actual damages caused thereby, we hold there is no evidence to support the jury's finding of malice and exemplary damages in response to special issues 26 and 27 and would further hold that there is insufficient evidence to support such findings.

Appellant Dave Hicks' points of error 39 and 41 are sustained.

■ We agree with appellant Dave Hicks that special issue 19 was improperly submitted in that it allowed the jury to find that an intentional tort was inflicted upon Commercial Title rather than John Wright. In that respect, special issue 19 was multifarious.[5] If the appellees conspired to force Commercial Title to pay off the notes, then the latter is bound by its release. Therefore, any cause of action Wright might have must be personal and may not derive from the alleged rights of Commercial Ti-

---

5. "SPECIAL ISSUE NUMBER NINETEEN:

"Do you find from a preponderance of the evidence that Mike Hicks, Eugene Goode and Dave Hicks conspired to induce Barbara Alexander to issue title binders as to the lots in issue without the first liens on said lots being first released and to force John Wright or Commercial Title to pay off the notes secured by the said lots?"

tle. Any derivative cause of action would then be barred by Commercial Title's release. Were it not for our prior rulings on the sufficiency of the evidence, this error of the trial court would be sufficient for remand on the issue of conspiracy. Appellant Dave Hicks' point of error 13 is sustained.

## ALTER EGO

In determining whether a corporation is the alter ego of an individual, we must consider Judge Calvert's statement in *Pace Corporation v. Jackson*, 155 Tex. 179, 284 S.W.2d 340, 351 (1955):

"Courts will not disregard the corporation fiction and hold individual officers, directors or stockholders liable on the obligations of a corporation except where it appears that the individuals are using the corporate entity as a sham to perpetrate a fraud, to avoid personal liability, avoid the effect of a statute, or in a few other exceptional situations."

This principle is reaffirmed in *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 203 (Tex.1962), and in *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 340 (Tex.1968), and many other cases.

The reasons for disregarding the corporate entity are "when the corporation is used to perpetrate a fraud, to evade an existing legal obligation, to achieve or perpetrate a monopoly, to protect a crime, to justify a wrong, to circumvent a statute, and when one corporation exists as a mere tool or business conduit of another corporation." *Minchen v. Van Trease*, 425 S.W.2d 435, 437 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.); *Rosenthal v. Leaseway of Texas, Inc.*, 544 S.W.2d 180, 181 (Tex.Civ.App.—Tyler 1976, no writ).

While each case involving disregard of the corporate entity must rest upon its own facts, this court said in *Holmes v. Clow*, 533 S.W.2d 99, 101–102 (Tex.Civ.App.—Tyler 1976, no writ):

"In order to warrant piercing the corporate veil, the courts generally require the presence of one or more of the following factual situations: (1) evidence that the corporate entity amounts to a fraud, promotes injustice or it is relied on to justify a wrong, (2) that it was inadequately capitalized, (3) that an individual controls and manages the entity in such a manner that it becomes his alter ego, and (4) that the corporate formalities were not adhered to by the corporation."

We believe it is sufficient to say that, as to all these corporate appellants, the evidence is legally and factually insufficient to warrant piercing the corporate veil.

Accordingly, appellant Dave Hicks' point of error 35 is sustained; appellant Mike Hicks' point of error 32 is sustained; and appellant Eugene Goode's point of error 39 is sustained.

In view of our holding that there is no evidence in the record to support the jury's findings, we do not reach the factual sufficiency points. If the points were reached, however, we would hold that there is insufficient evidence in the record to support the jury's findings that their respective corporations were the alter egos of Dave Hicks, Mike Hicks and Eugene Goode.

## RELEASE

The evidence is undisputed that John Wright took out a personal loan in the amount of $75,000.00 and placed the loan proceeds in the escrow account of Commercial Title; that Commercial Title later wrote a check to Dave Hicks Company in the amount of $76,380.47; that the check was given for and recited as consideration for the release by Dave Hicks Company of its lien on the lots in question as stated in a release dated December 3, 1973, signed by Thomas Hart, President of Commercial Title. In view of these undisputed facts, it is our opinion that in executing the release, Thomas Hart was acting for John Wright and thereby bound Wright as to Dave Hicks and Dave Hicks Company.

Appellee contends that even if John Wright was bound by the release, such release was executed under duress. The jury found that the release was executed under duress. However, we find no evidence of

duress in the record. Nowhere did Dave Hicks or Dave Hicks Company threaten to do something which they had no legal right to do. *Lawrence v. J. M. Huber Corp.*, 347 S.W.2d 5, 6 (Tex.Civ.App.—Waco 1961, no writ). There is no evidence of a threat to do any act, legal or illegal. There was an obvious potential threat of foreclosure. John Wright acknowledged this potential threat. However, this is an act which Dave Hicks or Dave Hicks Company had a legal right to do. Appellant Dave Hicks' points of error 1 and 2 are sustained.

In view of our ruling on the release, John Wright may not pursue any action against Dave Hicks and Dave Hicks Company. Therefore, Wright may not pursue any action he might have based on equitable subrogation against Dave Hicks or Dave Hicks Company.

However, Mike Hicks and Hicks Investments, Inc. do not have any points of error contesting the judgment against them based on equitable subrogation.

In view of our prior rulings in the case, we do not reach those points of error dealing with appellee's due diligence and reasonable care,[6] the statute of limitations,[7] and Barbara Alexander's agency relationship.[8] All points which have not been discussed have been considered and found to be without merit and are accordingly overruled.

That portion of the judgment of the trial court awarding appellee $5,000.00 against Eugene Goode, individually, based on inducing Barbara Alexander to "insure around" is affirmed; and that portion of the judgment awarding appellee $76,380.47, jointly and severally, against Mike Hicks and Hicks Investments, Inc. on the basis of equitable subrogation is affirmed. The judgment of the trial court is reformed and judgment is here rendered that Goode Construction Company is jointly and severally liable for $8,809.47 of the judgment of $76,380.47

against Mike Hicks and Hicks Investments, Inc. We also affirm the trial court's judgment that appellants Dave Hicks and Dave Hicks Company take nothing by their cross-action. In all other respects, the judgment of the trial court is reversed and rendered that appellee take nothing.

## ON MOTION FOR REHEARING

In holding, as a matter of law, that John Wright was bound by the release between Commercial Title (signed by Thomas Hart) and Dave Hicks and Dave Hicks Company, we are not to be understood as finding that Hart acted as agent for John Wright. Rather, it is our view that because Wright gave the money to Commercial Title for its own use, he was equitably subrogated to any rights arising out of the payment to Dave Hicks and his corporation.

█ It is clear that any possible cause or causes of action in Wright's favor as against Dave Hicks and Dave Hicks Company arose out of the payment of $76,380.47 from Commercial Title to Dave Hicks. It is also clear that in making such payment Commercial Title protected itself and John Wright against any possible liability in the event Dave Hicks Company foreclosed on its liens. Because John Wright provided the money for Commercial Title to negotiate the release, he was equitably subrogated to any rights they might have acquired by virtue thereof.

█ It is fundamental that a subrogee stands in the shoes of the subrogor and in the absence of some special contract arrangement has no greater rights than those of the subrogor. *Fox v. Kroeger*, 119 Tex. 511, 35 S.W.2d 679 (1931); *Anchor Casualty Co. v. Robertson Transport Co.*, 389 S.W.2d 135 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.). Such is the case at bar. Being subrogated to the rights of Commercial Title arising out of the payment of the $76,380.47, Wright had no greater rights

---

6. Appellant Dave Hicks' points of error 32 and 33; appellant Eugene Goode's points of error 42, 44 and 49.

7. Appellant Dave Hicks' points of error 14–21.

8. Appellant Dave Hicks' points of error 22–31; Eugene Goode's points of error 43, 45, 46, 47, 48 and 50.

than Commercial Title. Thomas Hart, acting for Commercial Title, bound Wright as to Dave Hicks and Dave Hicks Company in that Wright could not assert a claim which Commercial Title could not assert.

We disagree with appellee's contention that we are rewriting the release, thereby violating the parol evidence rule. The question of the effect of the release is one of legal construction, and, therefore, a question of law for the court. See *Exchange Bank and Trust v. Lone Star Life Ins. Co.*, 546 S.W.2d 948, 953 (Tex.Civ.App. —Dallas 1977, no writ). Our holding merely acknowledges the legal effect of the release. All motions for rehearing in this cause are overruled.