**Bob R. HOLMES, Appellant,**

v.

**Del CLOW and Mobile Modulars, Inc., Appellees.**

No. 874.

Court of Civil Appeals of Texas, Tyler.

Jan. 22, 1976.

Gregory L. Ceshker, Ashley & Welch, Dallas, for appellant.

James A. Gandy, Dallas, for appellees.

MOORE, Justice.

Appellant, Bob R. Holmes, instituted this suit against appellees, Mobile Modulars, Inc., and its president, Del Clow, to recover the sum of $2,062.50 for certain blueprinting and design work for a housing project consisting of forty-one houses to be constructed by Mobile Modulars, Inc. Appellant based his cause of action for personal liability against appellee, Del Clow, upon the premises that Clow organized and controlled Mobile Modulars, Inc., for his sole benefit and that said corporation was the alter ego of Clow created for the purpose of defrauding appellant and other creditors. Appellees answered with a general denial.

After a trial before the court, without a jury, the trial court rendered judgment in favor of appellant against Mobile Modulars, Inc., for the sum of $2,062.50 plus attorneys fee, but rendered a take nothing judgment against appellant in his suit against Del Clow, individually. Mobile Modulars, Inc., did not perfect an appeal from the judgment. Appellant, Bob R. Holmes, duly perfected his appeal from that part of the judgment denying him a recovery against Del Clow, individually.

We affirm the judgment.

Appellant seeks a reversal for seventy-six points of error. His principal contention is that the trial court erred in refusing to pierce the corporate veil and hold appellee individually liable because he contends the judgment is not supported by the evidence and that the evidence shows as a matter of law that Mobile Modulars, Inc., was the alter ego of appellee, Del Clow. Alternatively, he contends the trial court's findings and judgment are against the overwhelming weight and preponderance of the evidence.

■ Generally speaking, the legal fiction of corporate entity may be disregarded where the fiction is used as a means of perpetrating a fraud or is relied upon to justify a wrong. *Pace Corporation v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 341 (1955); *First Nat. Bank in Canyon v. Gamble,* 134 Tex. 112, 132 S.W.2d 100, 103 (Tex. Comm.App.1939). This rule, however, is an exception to the general rule which forbids disregarding corporate existence or entity and is not to be applied unless it is made to appear that there is such unity that the separateness of the corporation has ceased and the facts are such that adherence to the fiction would, under the particular circumstances, sanction a fraud or promote injustice. *First Nat. Bank in Canyon v. Gamble,* supra. 125 A.L.R. 265.

In order to warrant piercing the corporate veil, the courts generally require the presence of one or more of the following

factual situations: (1) evidence that the corporate entity amounts to a fraud, promotes injustice or it is relied on to justify a wrong, (2) that it was inadequately capitalized, (3) that an individual controls and manages the entity in such a manner that it becomes his alter ego, and (4) that the corporate formalities were not adhered to by the corporation. Each case must rest on its special facts. 18 Am.Jur.2d Corporations, secs. 14–16, p. 559 et seq.

The trial judge filed findings of fact finding that prior to the incorporation of Mobile Modulars, Inc., Del Clow was a majority stockholder, officer and director of several corporations,[1] all of which were headquartered at 6115 North Central Expressway in Dallas, Texas; that sometime prior to May 15, 1970, Wayne Patty contacted appellee advising him that he had received an F.H.A. commitment to construct 20 houses in Greenville, Texas, and the commitment would enable them to borrow the sum of $283,000.00 from a lending institution in order to construct and sell the houses. Appellee and Patty agreed to form a corporation for the purpose of obtaining the loan and constructing the houses. As a result, Mobile Modulars, Inc., filed a certificate of incorporation with the Secretary of State on May 15, 1970, with an authorized capitalization of $500,000.00. The capital in the amount of $1,000.00 was made by the sale of stock to appellee Clow, Wayne Patty, A. J. Dakour, T. H. Carter and Jerry Davis, each of whom paid the sum of $200.00 for 2,000 shares of stock. At the organizational meeting held on June 12, 1970, Del Clow, Jerry Davis, A. J. Dakour and appellee's wife, Grovonda Clow, were elected directors. Del Clow was elected president; A. J. Dakour, vice president, Mrs. Clow, secretary and Jerry Davis, assistant secretary. Appellee, Del Clow, and his wife continued to act as president and secretary, respectively, at all times pertinent to this litigation. Shortly after Mobile Modulars was organized, Wayne Patty, acting on behalf of Mobile Modulars, Inc., called on appellant Bob R. Holmes and requested him to prepare certain blueprinting designs for Mobile Modulars. Shortly thereafter appellant prepared the work and billed the corporation the sum of $2,062.50. Within about thirty days after the corporation was organized A. J. Dakour resigned as vice president and director and sold his stock to appellee, Del Clow, thereby making Clow the holder of two fifths of the stock and thereafter Clow and his wife constituted two of the three members of the board of directors. On July 9, 1970, Mobile Modulars, Inc., executed a note in the principal sum of $127,-500.00 payable to the order of Greenville West Corporation in payment of certain lots on which the homes were to be built. Appellee also signed the note individually. On the same day Mobile Modulars, Inc., borrowed the sum of $262,000.00 from South Oak Cliff Bank by executing a promissory note in that amount which was executed by Del Clow as president of Mobile Modulars, Inc., and which was also signed by appellee individually. Thereafter, the corporation commenced the construction of several houses. On August 7, 1970, the office staff of Mobile Modulars made out a check to the appellant in the amount of $2,062.50 in payment of the blueprinting work. Although on that date Mobile Modulars' bank account contained in excess of $20,000.00, appellee ordered the check voided because the disbursement was not authorized by the South Oak Cliff Bank and the bank would not approve the payment since the blueprint work was not made for the Greenville Housing project on which the bank made the interim financing loan but was designed to be used on future construction. Appellee and his wife continued to receive their monthly salaries of $2,000.00 and $450.00, respectively, from Mobile Modulars for approximately three months after the check was voided, but appellant never received

1. Condo, Inc., Vondell, Inc., Norvon, Inc., Miral Management, Inc., Equipment International, and Gro-Del Properties, Inc.

payment for his work. In the meantime, Mobile Modulars, Inc., began to suffer financial problems due to the fact that the homes were not selling as well as expected and it finally became necessary to discontinue the project. The corporation ceased doing business in November, 1971, and its corporate charter was forfeited on May 8, 1972. The trial court found that during the time Mobile Modulars was doing business, there was an agreement between the directors of several corporations in which appellee was interested that when one of the corporations became short of operating funds, its bills would be paid by one of the other corporations and the advancement would be charged on the books as a debt due and owing the advancing corporation. Numerous advancements were made from one corporation to another with one corporation paying all the rent, telephone bills and expenses for one month and another corporation paying the following month.

In addition the trial court further found: (1) that on or about June 17, 1970, the amount of One Thousand Dollars ($1,000.00) was paid as capital to organize Mobile Modulars, Inc., and that this amount was adequate at that time to meet the corporate responsibility of the defendant, Mobile Modulars, Inc. In addition, defendant, Mobile Modulars, Inc., had an interim loan from South Oak Cliff Bank amounting to Two Hundred Sixty-Two Thousand Dollars ($262,000.00) and that this amount was believed to be sufficient to handle the debts of the corporation; (2) the only written minutes of the meeting of the stockholders of the defendant, Mobile Modulars, Inc., that could be found was held on June 12, 1970; (3) the only written minutes of the meeting of the Board of Directors of the defendant, Mobile Modulars, Inc., that could be found was held on June 12, 1970; (4) that a treasurer was elected for the defendant corporation, Mobile Modulars, Inc., but no written minutes could be found to substantiate the election of Jerry Davis as treasurer; (5) none of the corporate minutes of the defendant corporation, Mobile Modulars, Inc., could be found that were executed; however, the plaintiff, Bob R. Holmes, did not establish by the preponderance of probative evidence that defendant corporation, Mobile Modulars, Inc., did not hold meetings; (6) that there were Board of Directors' minutes of the defendant corporation, Mobile Modulars, Inc., to authorize the execution of said note in the amount of One Hundred Twenty-Seven Thousand Five Hundred Dollars ($127,500.00), but copies of said minutes could not be found; (7) that there were Board of Directors' meetings or minutes of the defendant corporation Mobile Modulars, Inc., to authorize the loan in the amount of Two Hundred Sixty-Two Thousand Dollars ($262,000.00) from the South Oak Cliff Bank, but the copies of said minutes or meetings could not be found; (8) that from on or about August 7, 1970, through on or about November 24, 1970, the defendant corporation, Mobile Modulars, Inc., paid the defendant, Del Clow and Grovonda Clow the sum of approximately One Thousand Six Hundred Seventy-Three Dollars and Forty Cents ($1,673.40) out of its checking account, which sum represented reimbursements of expenses incurred for the corporation; (9) that credit accounts and bills in the name of Del Clow, individually, were paid out of the checking account of the defendant corporation as reimbursement for expenses incurred on behalf of the corporation; (10) that there were Board of Directors' meetings or minutes of defendant corporation, Mobile Modulars, Inc., authorizing payment of such charge accounts and bills in the name of the defendant, Del Clow, individually, by the defendant corporation, Mobile Modulars, Inc., but the minutes were not found; (11) that the defendant corporation, Mobile Modulars, Inc., was to pay its prorata part of the office expenses, including the telephone bills, for 6119 North Central Expressway, Suite 901, Dallas, Texas, and in that the defendant corporation had paid nothing for the months of May, June, and July, it consequently paid the office expenses for the months of August, September, October, and

November to repay the other corporations for the amounts it owed them; (12) that during, and a short time thereafter, to August 1970, the defendant corporation, Mobile Modulars, Inc., paid credit accounts, gasoline charges, and bills incurred in the name of other said corporations when the charges were for the benefit of the defendant corporation, Mobile Modulars, Inc.; (13) there were Board of Directors' meetings or minutes of the defendant corporation, Mobile Modulars, Inc., authorizing the payment of the rent as stated above, credit accounts, gasoline charges and bills in the name of the other corporations for the months of August, September, October and November 1970, but said minutes could not be found; (14) that the defendant, Mobile Modulars, Inc., executed a note payable to the order of the defendant, Del Clow, in the approximate amount of Twelve Thousand Three Hundred Seven Dollars and Thirty-Three Cents ($12,307.33) which was authorized by the Board of Directors, but the minutes could not be located; (15) that said note in the approximate amount of Twelve Thousand Three Hundred Seven Dollars and Thirty-three cents ($12,307.33) payable to the defendant, Del Clow, was given by the defendant Del Clow to Grodel Properties, Inc., as part of the consideration for the stock issued to him by Grodel Properties, Inc.; (16) that the Two Thousand Dollar ($2,000.00) check written to plaintiff, Bob R. Holmes, which later was voided by defendant, Mobile Modulars, Inc., was voided because the disbursement was not authorized as a legitimate disbursement in that the funds were for a specific construction site, while the plans of the plaintiff, Bob R. Holmes, were designed to be used at a future construction site. That the disbursements had to be approved by the bank advancing the moneys; (17) that plaintiff, Bob R. Holmes, did not establish by the preponderance of probative evidence that defendant, Del Clow, formed or operated Mobile Modulars, Inc., as his alter ego; (18) that plaintiff, Bob R. Holmes, did not establish by the preponderance of probative evi-

dence that he personally dealt with the defendant, Del Clow, or billed the defendant Clow individually for any of the work in question. Furthermore, Plaintiff, Bob R. Holmes, was under a duty to exercise ordinary care when dealing and extending credit to his customers, and he failed to do so; (19) that plaintiff did not establish by the preponderance of the probative evidence that defendant, Del Clow, used Mobile Modulars, Inc., as a sham to perpetrate fraud, to avoid personal liability, to avoid the effect of a statute, or take any other action to avoid personal liability to a third party creditor; and (20) that plaintiff, Bob R. Holmes, did not establish by the preponderance of the probative evidence that the defendant, Del Clow, exercised control over the other stockholders or directors of Mobile Modulars, Inc.

In determining whether the trial court's findings are supported by any evidence of probative value we are required to give credence only to the evidence favorable to the findings and will disregard all evidence to the contrary. The findings of fact and the conclusions of law will be construed together; and if the findings of fact are susceptible to different constructions, they will be construed, if possible, to be in harmony with the judgment and to support it. If the findings and conclusions of the trial court are supported by some evidence of substantial and probated character, they are controlling upon the appellate court and will not be disturbed even though this Court might have reached a different conclusion. *Brown v. Frontier Theatres, Inc.*, 369 S.W.2d 299, 301 (Tex. 1963); *Robert W. Payne Company v. J. W. Hill Construction*, 387 S.W.2d 92, 94 (Tex. Civ.App.—Dallas 1965, n. w. h.).

First, we consider the question of the alleged fraud. There is nothing in the evidence indicating bad faith on the part of the appellee in forming the corporation. Insofar as the record shows, the corporation was formed for the purpose of constructing a large number of houses under a specific F.H.A. commitment. Appellee testified

that prior to incorporation cost figures were prepared on the housing project and it was determined that the undertaking would be profitable. There is no evidence that appellee or Wayne Patty made any false representations to appellant or withheld facts concerning the corporation's financial condition.

■ Appellant contends that fraud was shown because the record shows without dispute that while his bill was outstanding and unpaid, (1) the corporation paid appellee and his wife's salaries totaling $2,450.00 per month, (2) the corporation paid all the rent and telephone bills of all the other corporations headquartered in the same office, (3) the corporation reimbursed appellee and his wife the sum of $1,290.12 for certain expenses, (4) the corporation executed a note to appellee for $12,307.33, (5) the corporation paid Condo, Inc., $1,295.82 without approval of the board of directors, and (6) during the three-month period in question paid personal bills incurred by appellee in the amount of $1,668.30. Appellant argues that the foregoing transactions had the effect of draining the assets of the corporation for appellee's own benefit and thus shows appellee intended to defraud creditors. The only testimony explaining these transactions came from appellee and his wife. According to their testimony each of the transactions amounted to a legitimate debt owed by Mobile Modulars and were made for the purpose of reimbursement. With regard to the $12,307.33 note executed by Mobile Modulars, appellee testified that the note was given in payment of furniture supplied the corporation by him which was shipped from another business owned by appellee in another state. Thus, the record contains at least some evidence of probative force in support of the judgment. Appellant raises nothing more than a suspicion or surmise concerning the alleged fraud and therefore his contention in this regard must be overruled. *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059 (1898); *Moore & Moore Drilling Co. v. White,* 345 S.W.2d 550 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.).

■ Next appellant contends that the corporation was under financed to the extent it constituted a fraud on persons dealing with it. The evidence shows that while the corporation had an authorized capital of $500,000.00, the sum of only $1,000.00 was paid in. The trial court found that the paid in capital was adequate at the time of incorporation in view of the fact that it had a commitment from a bank for an interim loan which the incorporators believed sufficient to cover its debts. There is no evidence that appellee or any other person misrepresented to appellant the extent of the capital of the company, nor is there any evidence that appellee personally received any benefit from the blue prints supplied by appellant. The trial court found that appellant failed to establish that appellee used the corporation as a sham to perpetrate a fraud, to avoid personal liability, or to avoid the effect of the statute. Subsequent events, namely the failure of the corporation, cannot afford the basis of finding fraud at the inception of the corporation. *Moore & Moore Drilling Company v. White,* supra. It is incumbent upon the one seeking to pierce the corporate veil to show by evidence tnat the financial setup of the corporation is just a sham and accomplishes an injustice. *Carlesimo v. Schwebel,* 87 Cal. App.2d 482, 197 P.2d 167 (1948); 63 A.L. R.2d 1051, 1055. Under the circumstances, and keeping in mind that the burden of proof on the issue was on appellant, we do not feel that the evidence is such as to require us to hold that, as a matter of law, the corporate entity should be disregarded on the grounds that the financial setup was a mere sham.

Next, appellant contends the appellee failed to adhere to the requirements concerning the operation of the corporation and that in so doing appellee assumed such control over the corporation as to make it, in effect, his alter ego. In this connection appellant argues that there is no evidence

showing that corporate minutes were kept and there is no evidence showing that the board of directors ever approved the various corporate transactions. He further contends that the evidence conclusively shows appellee exercised control over the directors. As stated above, the only testimony before the trial court concerning the corporate operations was given by appellee and his wife. They both testified that while the corporate records could not be located, apparently due to the lapse of time, the directors met and approved all corporate transactions. They further denied that appellee exercised control over the directors and testified each director was afforded a right to vote his convictions. There is no direct evidence in the record to the contrary.

■ Generally speaking the courts will not disregard the corporate entity and treat it as the alter ego of an individual unless it is shown that there is such unity of interest and ownership that the individuality of the corporation and the owner or owners of its stock has ceased and that the observance of the fiction would sanction fraud or promote injustice. Bad faith in one form or another must be shown before the court will disregard the fiction of separate corporate existence. *Hollywood Cleaning & Pressing Co. v. Hollywood Laundry Service,* 217 Cal. 124, 17 P.2d 709 (1932); *Carlesimo v. Schwebel,* supra. The problem of determining whether the corporate entity ever existed, or if it did, whether it ceased to exist is primarily a problem for the trier of the fact, and is not a question of law. The conclusion of the trier of the fact will not be disturbed on appeal if it is supported by any evidence of probative force. *H. A. S. Loan Service, Inc. v. McColgan,* 21 Cal.2d 518, 524, 133 P.2d 391, 394 (1943), 145 A.L.R. 349. There is some evidence showing that the appellee did not operate the corporation in such a manner as to make it his alter ego. The credibility of the witnesses and the weight to be given their testimony is a matter for the trier of

the fact. Under the circumstances we do not think this court is required to hold as a matter of law that the corporate entity ceased to exist and become appellee's alter ego.

■ Neither do we believe that the evidence is such as to justify a holding that the judgment is so against the overwhelming weight and preponderance of the evidence as to be clearly wrong.

■ Finally, appellant complains by numerous points of error of the action of the trial court in refusing to make additional findings of fact. We have carefully examined each of the seven requested findings and have concluded that the same either conflict with the original findings or amount to evidentiary requests on matters which had already been expressly or impliedly found by the trial court. Rules 296 and 298, Texas Rules of Civil Procedure, require that the trial court make additional findings only if such request relates to ultimate and controlling issues. Where, as here, the requested additional findings do not relate to the ultimate or controlling issues or where they would conflict with the original findings, additional findings need not be made. *Friedman v. Cohen,* 429 S.W.2d 510 (Tex.Civ.App.—Houston 1968, writ ref'd n. r. e.); *Guaranty Bond State Bank v. Tucker,* 462 S.W.2d 398 (Tex.Civ. App.—Dallas 1970, writ ref'd n. r. e.).

The judgment of the trial court is affirmed.