**CRAWFORD–STRAUSS PROPERTIES, INC. et al., Appellants,**

v.

**SAGEBRUSH SALES COMPANY, Appellee.**

No. 8691.

Court of Civil Appeals of Texas, Texarkana.

Aug. 29, 1979.

Rehearing Denied Sept. 18, 1979.

Supreme Court of Texas Granted Writ April 30, 1980.

Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellants.

Thomas P. Earls, Dallas, for appellee.

RAY, Justice.

This suit was brought to recover payment for lumber purchased from Sagebrush Sales Company (Sagebrush) by Crawford-Strauss Properties, Inc. Appellee (plaintiff), Sagebrush Sales Company, brought suit against appellants (defendants), Crawford-Strauss Properties, Inc., Crawford-Strauss Properties (a Texas General Partnership), Richard C. Strauss, and Strauss Investments, Inc., seeking recovery of the principal sum of $181,420.06, interest and attorney's fees. The case was submitted to the jury on special issues which were answered favorably to Sagebrush. The trial court entered its judgment that Sagebrush recover from appellants, jointly and severally, the princi-

pal sum plus $42,633.52 in pre-judgment interest, and $10,000.00 in attorney's fees for a total of $234,053.58. Appellants have appealed and have submitted eleven points of error for our consideration. The judgment against Crawford-Strauss Properties, Inc. will be affirmed and the judgment as it relates to all other appellants will be reversed. The judgment against Crawford-Strauss Properties, Inc. is not seriously contested in this Court, and from the record, it appears that the judgment rendered against it was proper.

The evidence offered by Sagebrush relative to the principal sum sued for, came from the deposition testimony of Richard C. Strauss, the deposition testimony of R. E. Scammell, Purchasing Agent and Coordinator of Apartment Projects for Crawford-Strauss Properties, Inc., and the "live" testimony of John A. Cheshire, Credit Manager for Sagebrush. When Sagebrush rested its case, appellants rested without offering any evidence and both appellee and appellants closed without further testimony.

In 1973, Crawford-Strauss Properties, Inc., acting through R. E. Scammell, its Purchasing Agent, sought lumber and related products to be used in the building of apartments in Tampa, Florida, and San Antonio, Texas. Mr. Cheshire, Credit Manager for Sagebrush, testified that he was asked to extend credit in 1973 to an entity seeking to buy a large quantity of lumber and that the name that was probably given to him was Crawford-Strauss Properties, Inc. As a part of his credit check, Cheshire asked for a financial statement of the corporation and was told by Scammell that none was available. Scammell testified that Sagebrush had to have some kind of financial statement so he requested of Mr. Strauss' secretary that she send Mr. Strauss' financial statement to Sagebrush's accounting office. Cheshire testified that he received the financial statement of "Richard C. Strauss, d/b/a Crawford-Strauss Properties", and that he knew immediately that it was not the financial statement of the corporation. Cheshire specifically testified that he never discussed the financial statement with Richard C. Strauss and that in fact he did not talk with Mr. Strauss at all before approving credit for the corporation. Cheshire talked to the president of Sagebrush, Don Kruse, about whether to have Mr. Strauss personally guarantee or underwrite the credit that was going to be extended to the corporation, but he could not recall whether he had ever asked for a personal guarantee. Nevertheless, no personal guarantee was ever secured from Richard C. Strauss. Subsequently, Cheshire approved the requested line of credit and started receiving purchase orders from Crawford-Strauss Properties, Inc. signed by R. E. Scammell. The purchase order made the basis of this suit is related to The Way Apartments, Phase III, in San Antonio, Texas. The principal balance due Sagebrush as found by the jury is the sum of $181,420.06 and such amount is not contested on appeal. Sagebrush insists that all of the appellants are jointly and severally liable and contends that Crawford-Strauss Properties, Inc. and the other appellant entities are the alter egos of Richard C. Strauss and that the affairs of the entities were indistinguishable from the affairs of Richard C. Strauss. It is thus asserted that Richard C. Strauss and the other entities are liable for the debt incurred by Crawford-Strauss Properties, Inc.

Appellants state that Sagebrush did not establish by jury findings or by evidence, any theory upon which it could impose liability upon any appellant other than Crawford-Strauss Properties, Inc. We agree.

In answer to Special Issue No. 1, the jury found that the balance owing to Sagebrush under the purchase order dated January 1974 on the San Antonio-Way III project was $181,420.06. It is noted that the purchase order was on a Crawford-Strauss Properties, Inc. form and signed by R. E. Scammell as Purchasing Agent for Crawford-Strauss Properties, Inc.

Preceding Special Issue No. 2, the jury was instructed that "a person may effectively control a corporation through ownership of a majority of the voting stock therein." Such instruction was clearly erro-

neous because there was no evidence that Richard C. Strauss owned any stock in Crawford-Strauss Properties, Inc.

Special Issue No. 2 was as follows:

"Do you find that the affairs of Crawford-Strauss Properties (a Texas General Partnership,) Crawford-Strauss Properties, Inc., Strauss Investment, and Strauss Investment, Inc., were indistinguishable from the affairs of Richard C. Strauss, and that he controlled each? Answer: <u>Yes</u>"

■ It appears that Special Issue No. 2 was submitted for the purpose of establishing that the various entities there listed were the alter egos of Richard C. Strauss in order to pierce the corporate veil and hold Strauss liable individually. The corporate entity may be disregarded only for extraordinary reasons. *Angus v. Air Coils, Inc.,* 567 S.W.2d 931, 933 (Tex.Civ.App. Dallas 1978, no writ). In *Hicks v. Wright,* 564 S.W.2d 785 (Tex.Civ.App. Tyler 1978, writ ref'd n.r.e.), it was stated:

"In order to warrant piercing the corporate veil, the courts generally require the presence of one or more of the following factual situations: (1) evidence that the corporate entity amounts to a fraud, promotes injustice or it is relied on to justify a wrong, (2) that it was inadequately capitalized, (3) that an individual controls and manages the entity in such a manner that it becomes his alter ego, and (4) that the corporate formalities were not adhered to by the corporation."

■ There is no evidence to support the jury's finding in answer to Special Issue No. 2 because there was no evidence concerning the affairs of Crawford-Strauss Properties, Inc. which would be material to an alter ego claim. There was no evidence as to its capitalization, its stock ownership, its directors, its management, its adherence or not to corporate formalities or any of its other affairs outside of the limited transactions of four purchase orders for lumber from Sagebrush. There was no evidence that the corporate existence of Crawford-Strauss Properties, Inc. was maintained fraudulently or in bad faith. As outlined in

*Angus v. Air Coils, Inc.,* supra, and *Hanson Southwest Corp. v. Dal-Mac Construction Co.,* 554 S.W.2d 712 (Tex.Civ.App. Dallas 1977, writ ref'd n.r.e.), the ". . . courts will not disregard a corporate entity unless it is employed to defraud existing creditors of the shareholder, to evade an existing obligation, to circumvent a statute, to achieve or perpetuate a monopoly or to protect crimes. . . ." Crawford-Strauss Properties, Inc. does not deny that it owes the debt, it just does not have the funds with which to pay the debt. Thus, none of the extraordinary circumstances listed above exist in this case to justify disregarding Crawford-Strauss Properties, Inc.'s separate corporate entity in order to hold Richard C. Strauss personally liable. There is simply no evidence in the record which establishes Crawford-Strauss Properties, Inc. as the alter ego of Richard C. Strauss. *Angus v. Air Coils, Inc.,* supra. Further, there was no evidence concerning the affairs of the other appellants which would establish liability against any of them.

Certainly, appellee made no attempt to prove that it had complied with Section 26.01 of the Texas Business & Commerce Code Annotated known as the Statute of Frauds. There was no instrument in writing signed by any appellant promising to answer for the debt of Crawford-Strauss Properties, Inc. other than the corporation itself.

■ The evidence is clear that Crawford-Strauss Properties, Inc. submitted its purchase order signed by R. E. Scammell as purchasing agent to Sagebrush for the purpose of buying lumber and related products. The purchase order was honored by Sagebrush. The evidence is also clear that Sagebrush knew that it was dealing with Crawford-Strauss Properties, Inc., as a corporation and that it was discussed between the credit manager for Sagebrush and the president of Sagebrush as to whether or not to get Richard C. Strauss to guarantee the debts of the corporation, but no such guarantee was ever secured.

There were no Special Issues 3 and 4, but Special Issue No. 5 was answered by the jury affirmatively finding that R. E. Scammell was authorized by Richard C. Strauss to furnish Sagebrush Sales Company with a copy of Richard C. Strauss', d/b/a Crawford-Strauss Properties, financial statement in the spring of 1973. In answer to Special Issue No. 6, the jury found that Richard C. Strauss intended that Sagebrush Sales Company rely upon said financial statement *in extending credit to Crawford-Strauss Properties, Inc.*

The testimony of Mr. Cheshire made it clear that he knew that when he got the financial statement of Richard C. Strauss that it was not the financial statement of the corporation although he knew that he was extending credit to the corporation. There was no evidence or testimony that R. E. Scammell was authorized to furnish anyone with Mr. Strauss' financial statement. There was no evidence at all of Mr. Strauss' intent, for Mr. Cheshire himself testified that he never even talked to Mr. Strauss before extending the credit. The jury did not find, and was not asked to find, that the financial statement was intended to induce Sagebrush to extend credit to, or deal with any appellant other than Crawford-Strauss Properties, Inc.

Special Issue No. 7 was:

". . . Do you find that Sagebrush Sales Company relied upon the financial statement of Richard C. Strauss d/b/a Crawford-Strauss Properties in extending credit for the construction of The Way Apartments, San. Antonio, Texas? Answer: <u>Yes</u>"

Apparently Special Issues 5, 6 and 7 were designed to submit some type of fraud theory, but the elements of fraud were not properly submitted. Special Issue No. 7 does not inquire into any material issue in the case because there was no contention, evidence or pleadings that the financial statement was in any way false. As a matter of fact, Mr. Cheshire checked the financial statement with several bankers and found it to be accurate.

The substance of the findings in Special Issues 8, 9 and 10 is that before January 18, 1974, Mr. Strauss, or his authorized agent, acted with the specific intent of inducing Sagebrush Sales reasonably to believe, and Sagebrush Sales, in extending credit for the San Antonio project, reasonably did believe, that, "the names Richard C. Strauss, d/b/a Crawford-Strauss Properties and Crawford-Strauss Properties, Inc. were two different names referring to the same person namely Richard C. Strauss." There is no evidence from which such an inference could have been drawn because the only testimony in the record is that the credit manager, Mr. Cheshire, knew immediately and absolutely that the financial statement of Richard C. Strauss, d/b/a Crawford-Strauss Properties was not the financial statement of the corporation. He also knew that the corporation did not have a financial statement. On October 10, 1973, Sagebrush Sales accepted two purchase orders bearing the name Crawford-Strauss Properties, Inc. in both the upper left hand corner and the lower right hand corner such that Sagebrush was put on notice that it was dealing solely with the corporation. The other purchase orders were on identical forms.

Special Issue No. 9 was as follows:

". . . Do you find that Richard C. Strauss so acted with intent that Sagebrush Sales Company rely upon that belief in extending credit for the construction of The Way III Apartments, San Antonio, Texas? Answer: <u>Yes</u>"

There is simply no evidence of the intent of Richard C. Strauss.

Special Issue No. 10 was submitted conditionally upon an affirmative answer to Special Issue No. 9 and since there was no evidence to support the answers to Special Issues 8 or 9, Number 10 became immaterial.

Points of Error 1 through 5 of appellants Crawford-Strauss Properties, Richard C. Strauss, individually, and as a partner in Crawford-Strauss Properties, and d/b/a Strauss Investments, and Strauss Investments, Inc. are sustained. The judgment against Crawford-Strauss Properties, Inc. is

affirmed and the judgment against all other appellants is reversed and judgment is here rendered that Sagebrush Sales Company take nothing against appellants Crawford-Strauss Properties, Richard C. Strauss, individually, and as a partner in Crawford-Strauss Properties, and d/b/a Strauss Investments, and Strauss Investments, Inc.