## SAGEBRUSH SALES COMPANY, Petitioner,

v.

## Richard C. STRAUSS et al., Respondents.

### No. B–8910.

Supreme Court of Texas.

Sept. 12, 1980.

Rehearing Denied Oct. 1980.

Thomas P. Earls, Dallas, for petitioner.

Jackson, Walker, Winstead, Cantwell & Miller, Jack Pew, Dallas, for respondents.

BARROW, Justice.

Sagebrush Sales Company brought this suit against Crawford–Strauss Properties, Inc., Crawford–Strauss Properties, Strauss Investments, Strauss Investments, Inc., and Richard C. Strauss to recover the balance due for goods and materials shipped by Sagebrush to "Crawford–Strauss" for use in construction of The Way Apartments at San Antonio, Texas.

The trial court rendered judgment on a jury verdict against all defendants for the principal sum owing plus prejudgment interest and attorneys' fees. The court of civil appeals affirmed as to Crawford–Strauss Properties, Inc., but reversed the judgment of the trial court and rendered a take–nothing judgment as to the other defendants. 598 S.W.2d 1. It held that there was no evidence to support the jury findings which impose liability upon any defendant other than Crawford–Strauss Properties, Inc. We disagree. Accordingly, we reverse the judgment of the court of civil appeals and remand the cause to that court for consideration of respondents' factual insufficiency points over which we have no jurisdiction.

The jury found in part: Richard C. Strauss acted, by himself or through his authorized agents, in such a manner as to lead Sagebrush to reasonably believe that the names Richard C. Strauss d/b/a Crawford–Strauss Properties and Crawford-- Strauss Properties, Inc. were two different names referring to the same person, namely Richard C. Strauss; Richard C. Strauss so acted with intent that Sagebrush rely upon that belief in extending credit for construction of The Way Apartments; that Sagebrush reasonably relied upon those acts in so extending credit; and that the affairs of Crawford–Strauss Properties (a Texas General Partnership), Crawford–Strauss Properties, Inc., Strauss Investment, and Strauss Investment, Inc. were indistinguishable from the affairs of Richard C. Strauss and that he controlled each.

■ It is a well–settled rule that when a party asserts that there is no evidence to support jury findings, we must review the record in its most favorable light, considering only the evidence and inferences which support the findings, and rejecting the evidence and inferences contrary to the findings. *Stodghill v. Texas Emp. Ins. Ass'n*, 582 S.W.2d 102 (Tex.1979); *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex.1974); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

When the record is viewed in this light, we find that there is evidence of probative force to support the jury findings. This controversy had its inception in mid–spring of 1973 when John Cheshire, credit manager of Sagebrush, was advised by one of its salesmen that Crawford–Strauss desired to purchase substantial lumber and other materials for use in constructing several apartment complexes Crawford–Strauss was going to build in Memphis, Tennessee; Tampa, Florida; and San Antonio, Texas. Sagebrush, a New Mexico Corporation, is in the wholesale lumber business. Cheshire contacted R. E. Scammell of Crawford-- Strauss who apparently had made the deal with the Sagebrush salesman in his capacity as purchasing agent. Cheshire requested that Scammell send Sagebrush credit infor-

mation in that it was contemplated that credit of from $200,000 to $300,000 would be required. In response to this request, Scammell sent Sagebrush a detailed financial statement of "Richard C. Strauss, d/b/a Crawford--Strauss Properties."

This statement was reasonably calculated to cause Cheshire and Sagebrush to believe that the projects in question were being constructed by Richard C. Strauss and that he did business under the name of "Crawford–Strauss Properties." The financial statement demonstrated this affirmatively and, by silence, negated that he operated through a corporate entity. The statement listed in part:

"Cash in Banks—Company Accounts  $  200,000

. . . .

Net Fees due within Twelve Months from Sale of Properties ($3,050,000 Gross less $1,700,000 of Related Costs)     1,350,000"

Although he listed stock holdings in twenty-three corporations, Richard C. Strauss DID NOT include Crawford–Strauss Properties, Inc. or Strauss Investment, Inc. or any corporation with a similar name. Also, he included as a part of his real estate holdings, 100% ownership of the tracts of land where the apartments were to be constructed. All of these holdings were shown as being owned by Richard C. Strauss, individually and doing business under the assumed name of "Crawford–Strauss Properties."

With this background, it is not unreasonable that Cheshire or any other official of Sagebrush was not disturbed that the purchase orders for the over $800,000 worth of goods came on forms of Crawford–Strauss Properties, Inc. and were signed under that name by Scammell as "Purchasing Agent." The account was set up by Sagebrush in the name of "Crawford–Strauss" and all invoices and loading manifests were sent in this name without objection by anyone on behalf of respondents. Although over $500,-000 worth of these invoices were paid, none were paid with a Crawford–Strauss Proper-

ties, Inc. check or through an account in that name. To the contrary, these invoices were paid by checks drawn on several different "Strauss Investment" accounts which were assumed names of Richard C. Strauss, individually. No mention was ever made to Sagebrush by any of respondents that Crawford–Strauss Properties, Inc. was a corporation until after this controversy arose.

The court of civil appeals erroneously relied on evidence and inferences to the contrary in support of its "no evidence" holding. Although Cheshire testified that he knew immediately that the financial statement furnished him was not the statement of "a corporation," this testimony must be considered in the light of his repeated denials that he knew the materials were being sold to a corporation. Rather, he believed they were sold to Richard C. Strauss d/b/a Crawford–Strauss. Likewise, his testimony regarding his failure to have Richard C. Strauss personally guarantee the debt must be considered in the light of his testimony that he was led to believe that the entities were synonyms of Richard C. Strauss and that the latter operated through these entities.

In the final analysis the holding of the court of civil appeals must rest on the fact that the purchase orders are on the letterhead of "Crawford–Strauss Properties, Inc." and that Scammell signed each as "Purchasing Agent" for same. We do not believe that under the circumstances presented here, this letterhead is sufficient to charge Sagebrush as a matter of law with knowledge it was contracting with a corporation. Certainly, it was not of any more significance than the fact that the invoices, sent by Sagebrush and paid without protest through other Richard C. Strauss entities, were all charged to "Crawford–Strauss."

In *Stein v. Hooker Industries, Inc.*, 545 S.W.2d 487 (Tex.Civ.App.–San Antonio, 1976, writ ref'd n. r. e.), the court refused to find as a matter of law that a seller was charged with actual knowledge that the purchaser was a corporation because in front of the purchaser's warehouse was a sign "Speed and Sport Warehouse, Inc." Here there is greater similarity between "Crawford–Strauss Properties" and the name of the corporation. This similarity was magnified by the failure of the financial statement to disclose the existence of the corporation.

Respondents did not put on any evidence, but simply rested their case when petitioner rested. Thus, there is very little evidence as to the legal status of the various entities sued by Sagebrush. Nevertheless, the uncontradicted deposition testimony of Scammell is that all the entities involves herein were *owned and controlled* by Richard C. Strauss.

■ While each case involving disregard of the corporate entity must rest upon its own special facts, we recognize that personal liability should be imposed on a stockholder only in extraordinary circumstances. *See Torregrossa v. Szelc*, 603 S.W.2d 803 (Tex.1980); *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336 (Tex.1968); *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196 (Tex.1962); *Pace Corporation v. Jackson*, 155 Tex. 179, 284 S.W.2d 340 (1955).

■ One situation wherein personal liability is imposed is where an individual controls and manages the entity in such a manner that it becomes his alter ego. *See Drye v. Eagle Rock Ranch, Inc., supra* ; *Tigrett v. Pointer*, 580 S.W.2d 375 (Tex.Civ. App.–Dallas 1978, writ ref'd n. r. e.); *Hicks v. Wright*, 564 S.W.2d 785 (Tex.Civ.App.– Tyler 1978, writ ref'd n. r. e.); *Holmes v. Clow*, 533 S.W.2d 99 (Tex.Civ.App.–Tyler 1976, no writ); *Minchen v. Van Trease*, 425 S.W.2d 435 (Tex.Civ.App.–Houston [14th Dist.] 1968, writ ref'd n. r. e.).

■ Here the jury found that the affairs of the respondent entities, which were all owned and controlled by Richard C. Strauss, were indistinguishable from his personal af-

fairs and that he acted in such manner as to lead Sagebrush to reasonably believe that the entities in question had reference to himself. When the record is properly examined under the no–evidence test, there is more than a scintilla of evidence to support these findings. These findings would support a personal judgment against Richard C. Strauss.

We, therefore, conclude that the court of civil appeals erred in sustaining respondents' no evidence points and rendering a take–nothing judgment as to these parties. The court of civil appeals did not consider respondents' other points complaining that the evidence is factually insufficient to support these crucial jury findings. Inasmuch as these factual insufficiency points are within the exclusive jurisdiction of the courts of civil appeals, we remand the cause to that court for determination of such points. *Custom Leasing, Inc. v. Texas Bank & Tr. Co. of Dallas*, 491 S.W.2d 869 (Tex.1973).

The judgment of the court of civil appeals is reversed and the cause is remanded to that court for further proceedings not inconsistent with this opinion.

Roberts, J., filed a dissenting opinion on rehearing in which Phillips, J., joined.

Clinton, J., filed a dissenting opinion on rehearing in which Onion, P. J., joined.