In re ALTA INDUSTRIES,
INC., Debtor.

Owen L. ROBERTS, Trustee, Plaintiff,

v.

ALTA INDUSTRIES, INC. and
United States, Defendants.

Bankruptcy No. 1–82–00422E–11.
Adv. No. 1–84–0548E.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Aug. 19, 1985.

Stubbeman, McRae, Sealy, Laughlin &
Browder, Inc., Austin, Tex., for Alta Industries, Inc., debtor and defendant.

G. Michael Lawrence, Austin, Tex., for
Owen L. Roberts, trustee-plaintiff.

Helen M. Eversberg, U.S. Atty., by Steven A. Maurer, Mary C. Vance, Tax Div.
Dept. of Justice, Dallas, Tex., for U.S.
(IRS) defendant.

JOSEPH C. ELLIOTT, Bankruptcy Judge.

## MEMORANDUM OPINION AND ORDER

Pursuant to Rule 52, Federal Rules of Civil Procedure, and the order of this Court dated June 28, 1985, the Court hereby renders this its Memorandum Opinion and Order which shall constitute appropriate findings of fact and conclusions of law.

## BACKGROUND

At the commencement of this case, the debtor, Alta Industries, Inc., owned 4.4 acres of land in which Austin National Bank held a security interest pursuant to a deed of trust lien. The United States purports to be a junior lien holder in the same property by virtue of assessments made against one Richard Lowell Stratton for his personal income tax liability. Austin National Bank filed a motion for relief from the automatic stay provisions, so that it could foreclose upon its deed of trust lien. After notice and a hearing, as required by section 362(d) of the Bankruptcy Code, the Court granted Austin National Bank's request, and the Bank proceeded with the foreclosure and sale of the property.

In what seems to be a rare occurrence in such cases, the foreclosure sale resulted in a surplus amount of money after payment of the Bank's claim and the costs of sale. It should be noted that since the value of the property at the foreclosure sale exceeded the debt secured by the deed of trust lien in a substantial amount, the debtor obviously had an equity in the property that was apparently unrecognized by the parties prior to the sale.

Following the sale, the debtor requested that the Trustee under the Deed of Trust pay all of the surplus to the debtor's estate. The United States requested that the Trustee pay the surplus funds to it, pursuant to its purported tax lien against the 4.4 acres of land for the personal income taxes of Stratton. The Trustee filed a petition for Interpleader and tendered the money into the registry of the Court.

## JURISDICTION

It is the contention of the United States that once this Court lifted the automatic stay with respect to the debtor's 4.4 acres of land upon Austin National Bank's request, that property and proceeds from its sale were no longer "property" of the debtor's estate; therefore the Bankruptcy Court is without jurisdiction over such property or proceeds, citing *In re Stoner Inv., Inc.,* 20 B.R. 143 (N.D.Ill.1982).

This reasoning is most clearly at odds with Section 541 of the Bankruptcy Code. It provides that the debtor's estate includes, *inter alia,* all legal and equitable interests of the debtor in property as of the commencement of the case, and all proceeds of or from property of the estate.

Furthermore, Section 362(e) of the Bankruptcy Code clearly designates who may benefit by the lifting of a stay:

(e) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated *with respect to the party in interest making such request,* ... *(Emphasis added.)*

In this case, the United States was not the party in interest making the request for the lifting of the automatic stay in order to foreclose upon its purported lien on the 4.4 acres of land. Section 362(a)(5) operates to stay "any act to ... enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." It is precisely this type of action which the United States desires to take; yet it argues that it need not seek an order of the Bankruptcy Court to proceed. The United States would, by its theory, bootstrap its way to the same relief afforded another creditor, Austin National Bank; and the protection afforded a debtor by the Bankruptcy Code against creditors would be defeated by this circumvention of the Code's procedures. The Court also notes the United States did not assert its claim in

the Bankruptcy proceeding until after the sale. Another junior lienholder, C.B. Construction Company, had filed its claim and was expressly excluded from the lifting of the stay order because its claim was disputed. The Court cannot accept the argument of the United States which would allow it to place itself in a superior position over other disputed claimants because of its inaction.

■ The debtor's estate in this case included the 4.4 acres of land it owned at the commencement of this case, and it includes the proceeds of and from the sale of that property in excess of the amount applied to the debtor's indebtedness to Austin National Bank. Accordingly, this Court has jurisdiction over the funds deposited into the registry of the court.

## THE CLAIM OF THE UNITED STATES

■ It is clear that the tax liability of one individual or entity does not extend to the property of another. A lien for federal taxes extends only to property in which the taxpayer has an interest. *St. Louis Union Trust Co. v. United States,* 617 F.2d 1293, 1300–1301 (8th Cir.1980); *In re Carlson,* 580 F.2d 1365, 1368–1369 (10th Cir.1978); *United States v. Burgo,* 175 F.2d 196, 198 (3rd Cir.1949). The claim of the United States in this case, through the Internal Revenue Service, is not based on any tax liability of Alta Industries Incorporated or even its shareholders, but on the personal income tax liability of Stratton, one of its incorporators and a former officer. The IRS asserts it has the right to seize the corporate property for these personal obligations under a fraudulent transfer theory and an "alter ego" or "nominee" theory. In determining the existence of property and rights to property to which a federal lien attaches, state law controls. *In re Carlson, supra; Shaw v. United States,* 331 F.2d 493, 497 (9th Cir.1964); *United States v. Taylor,* 254 F.Supp. 752, (D.C.Cal. 1966).

Under the Texas Fraudulent Transfers Act, Tex.Bus. & Com. Code Ann. § 24.02

(Vernon 1968), a transfer of property is void as to a creditor if the transfer was intended to delay, hinder, or defraud any creditor from obtaining that to which he is, or may become entitled. A conveyance which is found to be fraudulent as to creditors is wholly null and void as to such creditors, and the legal as well as equitable title remains in the transferor for the purposes of satisfying debts. *Texas Sand Co. v. Shield,* 381 S.W.2d 48, 54 (Tex.1964). A transfer made with a fraudulent intent to evade future liabilities is void as to subsequent creditors. *Hartman v. Hartman,* 135 Tex. 596, 138 S.W.2d 802, 803 (1940).

■ In *Minchen v. Van Trease,* 425 S.W.2d 435, 437 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.), seven factual circumstances were enumerated which will justify the piercing of the corporate veil:

> These are when the corporation is used to perpetrate a fraud, to evade an existing legal obligation, to achieve or perpetrate a monopoly, to protect a crime, to justify a wrong, to circumvent a statute, and when one corporation exists as a mere tool or business conduit of another corporation.

A review of the cases in the area of piercing the corporate veil discloses that each case turns on its own facts and the Court must decide what is fair and equitable under the circumstances of that case. *See, e.g. Sagebrush Sales Co. v. Strauss,* 605 S.W.2d 857, 860 (Tex.1980). While each case involving disregarding of the corporate entity must rest on its own specific facts, the corporate veil should be pierced only "in extraordinary circumstances." *Id.* It is clear that the burden rests on the party seeking to pierce the corporate veil. It is a significant burden and the corporation's separate existence will be given effect unless there are circumstances justifying disregard of the corporate entity. *Edwards Company, Inc. v. Monogram Industries, Inc.,* 700 F.2d 994, 999–1000 (5th Cir.1983).[1]

---

1. Since the provisions of 26 U.S.C. § 7426 were invoked, the United States also has the burden

Under either a fraudulent transfer theory or alter ego theory, it is clear the facts would have to establish, in the first instance, that Stratton had an interest in the 4.4 acres purchased in the name of Alta Industries Incorporated.

In support of its claim, the United States introduced evidence that Richard Lowell was an alias for Richard Lowell Stratton and that Stratton had not filed a federal income tax return since 1971. Stratton came under the scrutiny of the IRS in April 1981, and contacts were made with members of the Stratton family by IRS agents seeking information on his tax status. A power of attorney was later filed with the IRS on his behalf by a New York attorney. The property in question was purchased in November, 1981 in the name of Alta Industries Incorporated by Stratton, its president, under the name of Richard Lowell. He was also one of the original incorporators of Alta Industries Incorporated, and members of his immediate family were the remaining incorporators. The purchase price for the property was paid in cash. Stratton had purchased other property in Texas under the name of Richard Lowell and it was later transferred to Alta Industries Incorporated. Stratton had also participated in the purchases of other properties in Texas and elsewhere which were placed in the name of different corporate entities. Stratton was later indicted and convicted of federal criminal drug charges.

If this had been all the evidence introduced, the Court may have accepted these circumstances as sufficient to establish a fraudulent transfer or alter ego under authority such as *United States v. Williams,* 581 F.Supp. 756 (N.D.Ga.1982), *aff'd,* 729 F.2d 1340 (11th Cir.1984). However, these facts are insufficient in light of the evidence that established that there were several traits of corporate existence which show that Alta Industries Incorporated is a separate, viable, legal entity and evidence

showing that the source of the funds to purchase the 4.4 acres did not originate with Stratton but with members of the Hussein Berro family, who are its stockholders. *Flores v. United States, supra.* The corporation was chartered in November, 1981 and remained franchised to the present. It issued stock, maintained sufficient corporate form, had a corporate bank account, obtained loans in the corporate name, purchased the subject property in the corporate name, was sued in its corporate capacity, hired attorneys, accountants and independent contractors in its corporate name, had a state tax employer number with the comptroller of the currency in its corporate name and filed for bankruptcy in its corporate name. There was no evidence that Stratton had any ownership interest in Alta Industries Incorporated. On the contrary, the evidence established that the Hussein Berro family gave large sums of money to Stratton, whom they knew as Richard Lowell, to invest in the United States economy, specifically for the purchase and development of real estate. Within a few months after the formation of Alta Industries Incorporated, control of its assets, including the day to day operation of a retail florist shop and the development of the 4.4 acres in question, was taken over by a member of the Berro family, Ayla Schbley. Up to that point, Stratton had shown little or no interest in the operation of Alta Industries Incorporated businesses or its assets. Schbley was the first and only stockholder Alta Industries Incorporated had. The evidence, rather than showing that Ayla Schbley or Alta Industries Incorporated was acting in concert with Stratton in some improper fashion, established that Ayla Schbley personally assisted the United States government in locating and apprehending Stratton when he was a fugitive from justice, a fact which escaped the attention of the IRS. Schbley also gave information to the IRS to assist it

---

of persuasion on whether the levy is wrongful because the taxpayer has no interest in the property. *Flores v. United States,* 551 F.2d 1169, 1174 (9th Cir.1977). This burden has been described as requiring the Government to estab-

lish its asserted nexus between the taxpayer and the third party by substantial evidence. *Valley Finance v. United States,* 629 F.2d 162, 171 (D.C. Cir.1980).

in locating Stratton's assets. Stratton made no effort to transfer other assets to the Alta Industries corporate entity. Only those assets whose purchase was authorized by the Berro family were put in the name of Alta Industries Incorporated. No effort was made to liquidate those assets even after it was clear to all concerned that the IRS had focused attention upon them. By liquidating the assets, it would have been a simple matter to defeat the claim of the IRS or any other creditor. Instead, Schbley sought to keep Alta Industries Incorporated a viable concern by infusing into it his own personal funds from the sale of his personal assets, and he tried to protect its assets through appropriate legal channels, which led to this Court. These circumstances are totally inconsistent with any theory that the funds to purchase the 4.4 acres originated with Stratton or that Alta Industries Incorporated was an alter ego of or used in some fashion by Stratton to hide his personal assets. The Court finds that the funds used to purchase the 4.4 acres did not originate from Richard Lowell Stratton, but rather from the Hussein Berro family, that Alta Industries Incorporated was not the "alter ego" or "nominee" of Richard Lowell Stratton, and that Alta Industries Incorporated was not used to hide the assets of Stratton or otherwise aid his illegal activities. Accordingly, Stratton had no interest in the 4.4 acres which would subject it to seizure for his personal income tax liability.

Alta Industries Incorporated is entitled to the funds on three legal theories. First, as noted above, there is no factual basis for the IRS to "pierce the corporate veil" or claim a fraudulent transfer. The corporation is a separate legal entity for business and tax purposes and it is well established that the assets of one entity cannot be applied to the tax liability of another. Second, the so-called "trust fund" doctrine is applicable. The law is well settled in Texas that the delivery of money by one person to another for a specific purpose creates a trust. *First Nat's Bank of Amarillo v. Slaton Indep. School Dist.*, 58 S.W.2d 870 (Tex.Civ.App.—Amar-

illo 1933, writ dism'd); *Sharon Grain Co. v. Farmers' Nat'l Bank of Follett*, 277 S.W. 449 (Tex.Civ.App.—Amarillo 1925, no writ). The Court finds in this case that the Hussein Berro family delivered property to Richard Lowell Stratton for the specific purpose of investing in the United States economy. The funds were held by Stratton in trust for the Berro family and were used to purchase the 4.4 acres. The legal effect of the funds being trust funds is simply that they or their proceeds are not Stratton's and cannot be subject to non-trust claims. Third, equitable considerations require that the IRS not recover under any "alter ego theory" to satisfy the personal income tax liability of Stratton. When the IRS seeks to pierce the corporate veil in the instant case, they are seeking an equitable remedy from the Court. *FMC Fin. Corp. v. Murphree*, 632 F.2d 413, 422 (5th Cir. 1980). The equities in the instant case militate against piercing the corporate veil because it would destroy the numerous good faith claims of creditors who dealt directly with Alta Industries Incorporated. Accordingly, the Court holds that the United States shall not recover any of the assets of Alta Industries Incorporated to satisfy the personal income tax liability of Richard Lowell Stratton.